## Commonwealth v. Campbell

*Andrew T. Park*, district attorney, and *George F. P. Langfitt*, assistant district attorney, for Commonwealth.
*Clarence Burleigh, Jr.*, for defendant.

MUSMANNO, J., October 31, 1936.—Defendant, James Campbell, is charged with operating a motor vehicle while under the influence of intoxicating liquor. It is advanced in his behalf that he cannot possibly be guilty of this offense because his automobile was not operated on a public highway. The facts are that on June 13, 1936, defendant, while under the influence of intoxicating liquor, drove his car for a distance of about two blocks on the West Hill road located in Snowden Township. This road is on property owned by the Pittsburgh Coal Company and runs through a settlement known as Montour Ten Patch. The road is indubitably a private thoroughfare, as opposed to a public highway.

If The Vehicle Code does not cover the operation of vehicles on private property defendant is entitled to his discharge.

The indictment is brought under paragraph (f), sec. 620, of The Vehicle Code of May 1, 1929, P. L. 905, as amended by the Act of June 22, 1931, P. L. 751.

For purposes of convenience in reference and discus-

sion in this opinion we will quote the entire section 620, which enumerates certain acts which are interdicted by the code, and among which is the one with which defendant stands charged. Section 620, ipsissima verba, reads as follows:

"Section 620. Violation of License Provisions—It shall be unlawful for any person to commit any of the following acts:

"(a) To display, or cause or permit to be displayed, or to have in possession, any operator's license or learner's permit, knowing the same to be fictitious or to have been cancelled, revoked, suspended or altered.

"(b) To lend to, or knowingly permit the use of by, one not entitled thereto any operator's license or learner's permit issued to the person so lending or permitting the use thereof.

"(c) To display, or to represent as one's own, any operator's license or learner's permit not issued to the person so displaying the same.

"(d) To fail or refuse to surrender to the department, upon demand, any operator's license, learner's permit, registration card, registration plates, certificate of title, or duplicates thereof, which have been suspended, cancelled or revoked as provided in this act.

"(e) To make use of or operate any motor vehicle without the knowledge or consent of the owner or custodian thereof.

"(f) To operate a motor vehicle while under the influence of intoxicating liquor, or any narcotic drug or habit producing drug, or permit any person who may be under the influence of intoxicating liquor, or narcotic or habit producing drug, to operate any motor vehicle owned by him or in his custody or control.

"(g) To turn off any or all the lights on a motor vehicle for the purpose of avoiding identification or arrest.

"(h) To operate any motor vehicle upon the highways of this Commonwealth, after operating privilege is suspended or revoked.

"(i)  To operate any motor vehicle upon the highways of this Commonwealth, after its registration has been suspended by the secretary.

"(j)  To use a false or fictitious name, or give a false or fictitious address, in any application or form required under the provisions of this act, or knowingly make a false statement, or knowingly conceal a material fact, or otherwise commit a fraud in any application.

"Penalty.—Any person violating any of the provisions of subsections (a), (b), (c) or (d) of this section shall, upon summary conviction before a magistrate, be sentenced to pay a fine of fifty ($50) dollars and costs of prosecution, and, in default of the payment thereof, shall undergo imprisonment for not more than ten (10) days.

"Any person violating any of the provisions of subsections (e), (f), (g), (h), (i) or (j) of this section shall be guilty of a misdemeanor, and shall, upon conviction thereof in a court of quarter sessions, be sentenced to pay a fine of two hundred ($200) dollars and costs of prosecution, or undergo imprisonment for not more than three (3) years, or suffer both such fine and imprisonment."

Defendant is charged with violating paragraph (f) of this section, namely, operating a motor vehicle while under the influence of intoxicating liquor.

There is nothing in these words which suggests, or by any line of reasoning could be interpreted to mean, that the prohibition applies only to cars on the public highway. The statute declares as plainly as the English language can put it that "It shall be unlawful for any person . . . To operate a motor vehicle while under the influence of intoxicating liquor." It does not say that it shall be unlawful for him to operate it on a public highway, street, thoroughfare or road. It categorically and all-inclusively forbids a motorist under the influence of intoxicating liquor to operate a car anywhere, any time, any place.

As we view it, the prohibition in question would be charged with a very serious shortcoming if it applied only to public highways. There are private estates so vast and

rambling that the public frequently and easily transgresses the boundaries thereof without realizing the trespass. Does it mean that on those estates the proprietor, should he be drunk, could drive his car over an innocent pedestrian and yet be exempt from prosecution? Does it mean that on the widespreading, extensive properties of coal operators, intoxicated motorists may kill and maim at will? Is defendant aware of the fact that in this State there are private coal companies whose domains embrace territories as large as counties?

But aside from the absurdity and unfairness of exempting vast estates from the operation of The Vehicle Code, it appears to us that it would be equally as unjust to suspend the operation of its salutary and wholesome provisions on small properties. For instance, should a drink-mad motorist be permitted to drive wildly out of his private garage, bowling over anyone in his irresponsible path and yet be immune from prosecution just because he happens to be on his own property? Many private driveways cross sidewalks which border public highways so that pedestrians cannot but traverse them as they proceed on their individual and lawful errands. May an inebriated driver strike such pedestrians and yet laugh at the law which could admittedly arrest him if the collision had occurred only a few feet farther out into the public street? Is the statute before us so mechanical and obtuse that it can compass so unreasoning, unreasonable, irrational and fatuous a distinction? We know that the law at times is capable of some foolish things, but we cannot believe that the legislature of 1931 intended so sophistical a differentiation as is contended for in behalf of defendant here.

We are cognizant of the fact that in a sister State a court decision recently held that a motorist who hits and kills a person elsewhere than on a public road or highway cannot be convicted of manslaughter. In that case defendant's car, driven by him while intoxicated, struck a Dr. Lange while the doctor was walking along a driveway

within the grounds of a hospital. The court explained that according to the statute on which the conviction was based, the State was required to prove that at the time Dr. Lange met his death defendant's automobile was being operated upon a public road or highway of the State. Perhaps our comment on this case may be regarded as a gratuitous one, but we cannot let the occasion pass without saying that any law which permits a drunken driver to kill a doctor while he is in the sanctuary of hospital territory, and yet allows him (the motorist) to go unprosecuted, is not a law but a monstrosity.

A careful reading of section 620 of our act shows clearly that the interpretation given the Ohio law just discussed is impossible. We repeat that paragraph (*f*) fails to make any reference to public highways. Paragraph (*h*), on the contrary, specifically mentions that type of a thoroughfare. The latter paragraph reads that it shall be unlawful "To operate any motor vehicle *upon the highways of this Commonwealth,* after operating privilege is suspended or revoked." (Italics ours). Thus it will be observed that the statute makes a sensible and reasonable distinction between territory embraced under paragraph (*f*) and that embraced under paragraph (*h*). A man may have his operating privilege revoked so that he cannot travel about on the public highway and yet it would be unnecessary and purposeless punishment to prevent him from moving his car around in his own garage, for instance. However, if he is drunk, paragraph (*f*) will not let him even touch the gear shift with the engine running because that would be operating a motor vehicle. A drunken person behind a wheel is a potential killer anywhere, but a sober motorist with his operating privilege suspended or revoked is not necessarily dangerous per se, and the law restricts his movement as punishment and example to others rather than because of any inherent dangerousness in his make-up. The distinction made by the law between these two situations is wise and sensible.

If the law did not intend to differentiate between the movement of an operator under paragraph (f) and his movement under paragraph (h), why did it in the former case omit all reference to highways and in the latter specifically include it? The same thing is true of paragraph (i), which prohibits the operation of a motor vehicle upon the highways of the Commonwealth after its registration has been suspended by the secretary. It does not prohibit the operation of such a car on private property, and properly so. If the owner were prohibited from moving his car on his own property it is conceivable that safety might be imperiled. The machine might be parked in such a position, as for instance on a hill or grade, that a change of location would be imperative to save life and property from damage. Thus under paragraph (i), the limiting of prohibition of movement of the car is confined to the public highway.

If the legislature intended that drunken drivers should be amenable to the law only when they drove their cars on the highways of the Commonwealth they could have so stated. When they specifically limited the application of the statute to the public highways in paragraphs (h) and (i), they, by statutory interpretation, declared that there was no geographical limitation to the application of all the other paragraphs of that section, among which is paragraph (f), the liquor clause.

We are aware that the title of The Vehicle Code declares that the act regulates: ". . . the use of highways, and the operation of vehicles, tractors, street cars, trackless trolley omnibuses . . . upon the highways of this Commonwealth". But it must be obvious that the word "highway" here is used in its generic sense and applies to all streets, avenues, roads, lanes and even alleys in the Commonwealth. In the phrase "highways of this Commonwealth," the preposition "of" is not used in a possessory sense. Certainly it cannot be contended that The Vehicle Code applies only to traffic on highways owned by the Commonwealth. To say that the code is in effect only

when a vehicle is physically on a highway is opposed to the most elementary reflection for over one half of its provisions control operations off the highway.

But all doubt regarding the applicability of the code to vehicles on private highways is dissolved by the first clause in the title, which says that the code provides "for the protection of the public safety." Public safety is not restricted to public highways. There is no place in this Commonwealth, and there should be none, where any of the people may be denied the protection of its laws regarding safety to life and limb. Public safety obliterates all private boundaries and transcends all private interests. And certainly protecting the people of the Commonwealth from the drunken driver is protecting the public safety, regardless of the situs where the protection is being afforded.

We, therefore, hold that under paragraph (f), sec. 620, of The Vehicle Code of Pennsylvania it shall be unlawful for any person to operate a motor vehicle while under the influence of intoxicating liquor anywhere, any time, any place, any way, any how, in any manner of means and on any errand, mission or journey. In other words, the person who is under the influence of liquor has no more right behind the wheel of an automobile than he has behind the trigger of a shotgun. And it is obvious that no one would reason or declare that an intoxicated person may not use a firearm on the streets, but that he may without legal responsibility fire at will on a private road or in his private home.

Defendant, James Campbell, is properly indicted and properly charged with the crime of driving while under the influence of intoxicating liquor even though he operated his car on a private road, and the motion for his discharge is dismissed.

*Order*

And now, October 31, 1936, the motion to discharge defendant is dismissed and he is directed to present himself for sentence forthwith.