THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* JOHN TAYLOR, Defendant.

Court of Special Sessions held by a City Magistrate of the City of New York, Borough of Queens, April 7, 1952.

*T. Vincent Quinn, District Attorney* (*John Londergan* of counsel), for plaintiff.

*Patrick I. Flannelly* for defendant.

Shapiro, M. The defendant came on for trial before me, sitting as a Court of Special Sessions, charged with a violation of the provisions of subdivision 5 of section 70 of the Vehicle and Traffic Law of the State of New York, in that he operated a motor vehicle: "in a parking lot * * * rear of 536 Beach 22nd Street, Far Rockaway, and on New Haven Avenue, a public highway in the County of Queens, City and State of New York, while he was in an intoxicated condition."

The People adduced no proof that the defendant operated the automobile in question "on New Haven Avenue, a public highway in the County of Queens," and the question is, therefore, directly posed as to whether the defendant may be found guilty of a violation of subdivision 5 of section 70 of the Vehicle and Traffic Law for operating a motor vehicle in a privately owned parking lot in the rear of the apartment house at 536 Beach 22nd Street.

At the conclusion of the entire case the court was convinced beyond a reasonable doubt that the defendant operated the automobile in question in the parking lot "while he was in an intoxicated condition", and so stated. Decision was reserved on whether, as a matter of law, the subdivision in question covered the driving of a motor vehicle on private property under the circumstances here present. The defendant contends that "violations of the Vehicle and Traffic Law can be had only for acts committed on a public highway or in public areas."

Subdivision 5 of section 70 of the Vehicle and Traffic Law, so far as here material, reads as follows: "Operating motor vehicle or motorcycle while in an intoxicated condition. Whoever operates a motor vehicle or motorcycle while in an intoxicated condition shall be guilty of a misdemeanor."

The first legislative recognition of a motor vehicle appeared slightly over fifty years ago when by chapter 531 of the Laws of 1901 the definition of a "carriage" as included in the Highway Law was amended to include "automobiles or motor vehicles * * * and all other vehicles propelled * * * by electricity, steam, gasoline, or other source of energy."

In 1929 by the enactment of chapter 54 of the Laws of 1929, the modern Vehicle and Traffic Law was consolidated into one act (Consolidated Laws, ch. 71).

The rapid growth of the use of automobiles is so well known as not to require discourse, but the citation of some figures may be in order. In 1901 only 954 vehicles were registered by the Secretary of State; in 1925, the Commissioner of Motor Vehicles issued a total of 1,635,337 registrations of all types;

in 1950, the total of all registrations had grown to 3,882,155. The picture is similar as to drivers' licenses. In 1903 the Secretary of State issued licenses to 2,383 chauffeurs; in 1925, the year after operators' licenses were required State-wide, the commissioner licensed 1,953,988 drivers. On December 31, 1950, there was a total of 5,289,991 licenses in force.

The registration of motor vehicles and of licensed operators and chauffeurs running into the millions makes it manifest that the State has a vital interest in legislating with respect to the proper operation and management of motor vehicles. Their capacity for harm when improperly operated is unquestionable. Under the circumstances a construction which would unduly limit the applicability of the driving-while-intoxicated section of the Motor Vehicle Law should not be countenanced unless directly required by the language of the statute or the intention of the Legislature as evidenced therein.

The facts in this case highlight that conclusion. The parking lot in question was adjacent to and was provided for use by the occupants and visitors to the apartment house at 536 Beach 22nd Street, Far Rockaway, in the borough of Queens, city and State of New York. Thus, it was open to the use of the public and in truth and in fact, even though not in law, an extension of the public highway. Persons using a parking lot require just as much protection from drunken drivers as do those on public sidewalks and highways.

It is obvious from a reading of the section " Whoever operates a motor vehicle or motorcycle while in an intoxicated condition " that no requirement is therein contained that the place where the defendant must be operating a motor vehicle before he can be found guilty of driving while in an intoxicated condition is on a public highway, and the question is whether such a limitation must be read into the statute.

There are many provisions of the Vehicle and Traffic Law which by their very terms are limited to operation of vehicles while on the public highway, which, by subdivision 2 of section 2, is defined as including " any highway, road, street, avenue, alley, public place, public driveway or any other public way."

Thus, subdivision 1 of section 11 provides that " No motor vehicle shall be operated or driven *upon the public highways* of this state without first being registered "; subdivision 14 of section 11 deals with vehicles " operated *upon public highways* connecting farms or portions of a farm "; subdivision 1 of section 12 prohibits the operation of " a motor vehicle *on the public highways* of this state unless such motor vehicle

shall have a distinctive number assigned to it "; subdivision 3 of section 12 prohibits the drawing of " a trailer *on the public highways* of the state, unless such trailer shall have a distinctive number assigned to it "; (emphasis ours). Other similar instances of specific limitations to the *public highways* of the State by affirmative recitation in their very provisions are found in subdivision 4 of section 12, and sections 14, 15, 17, 20, 51, 56, 58 and 59.

It is thus obvious that the Legislature when it meant to limit the applicability of any particular sections of the Vehicle and Traffic Law to the public highways said so in so many words. If it had intended to so limit the effect of subdivision 5 of section 70 it could have very easily have done so by using the same phraseology employed in the section set forth and cited above. Not having done so, the section should be given the full effect and intent of its apparent meaning and should not be so interpreted as to destroy or limit the very purpose for which the statute was enacted. (McKinney's Cons. Laws of N. Y., Book 1, Statutes [1942 ed.], §§ 148, 276; 61 C. J. S., Motor Vehicles, § 625). This court has been unable to find any appellate court decision in this State which deals with or passes upon the question here at issue, and recourse has, therefore, been had to decisions of other States having statutes similar to ours.

Wherever the question has come up for decision, the appellate courts in other States, have uniformly followed the rule laid down (42 C. J. S., Motor Vehicles, § 1294) that, " The essential elements of the offense, under a statute prohibiting the operation of a motor vehicle upon any public street or highway while under the influence of intoxicating liquors, are: (1) Driving an automobile (2) upon a public street and (3) while under the influence of intoxicating liquors. *However, a statute which merely provides that no person shall operate a motor vehicle while in an intoxicated condition does not require, as an element of the offense, that the driving should be done on a public highway.*" (Emphasis ours.)

In passing on a statute which is almost a verbatim replica of our own, and which reads " Whoever operates a motor vehicle while in an intoxicated condition is guilty of a misdemeanor," the highest court of Alabama in *O'Reilly* v. *State,* 235 Ala. 328, 329 said: " Under the terms of this statute, enacted by the Legislature in the exercise of the police power, the *place* of operation is not made an element of the offense." (Emphasis ours.)

In *State* v. *Carroll* (225 Minn. 384) the driving-while-intoxicated statute was also similar to our own. In affirming a judgment of conviction thereunder, the court said (p. 386): " It would be absurd to say that a person driving or operating a motor vehicle while intoxicated or under the influence of intoxicating liquor or narcotic drugs was not guilty of a violation of the statute under consideration merely because at the moment such person was stopped or apprehended he happened to be either on or near a private roadway instead of on a public street or highway, because no one can say when such a person, while in a confused or befuddled state of mind as a result of his or her condition, will leave the private road and pursue a mad, zigzagging course down a public highway or street, with the resulting damage and horrors so frequently reported."

In Iowa, the statute reads that: " Whoever while in an intoxicated condition operates a motor vehicle shall upon a conviction be sentenced to the penitentiary ".

In passing upon that statute and holding that it applied even when the vehicle was being driven on a private thoroughfare, the court said (*State* v. *Dowling,* 204 Iowa 977, 979–980): " Nowhere in such legislation is there any indication that the offense contains the prerequisite of commission upon a public road or street, nor does the fact that it is found in the chapter relating to motor vehicles and ' the law of the road ' signify that, because of said title, construction requires the implication that the definition is not complete without including, by inference, such unexpressed condition. See *State* v. *Pike,* 312 Mo. 27 (278 S.W. 725). Important is the fact that throughout the chapter the legislators have limited the scope of the act to the public thoroughfares, if they so intended, and when the thought was otherwise, the omission expresses it. Automobiles have been declared dangerous instrumentalities, and it can be readily understood why their operation by intoxicated persons would not be allowed anywhere, for the very good reason that the influence of liquor upon the human mind is such that the addict might not remain off the public highway, but because of said very loss of self-control, wander or recklessly drive the machine in front of or over others legitimately using the ' road,' oftentimes causing injury, destruction or death."

In expressing the same thought the court in *Commonwealth* v. *Oakley* (36 Pa. D. & C. 327) affirmed a judgment of conviction for drunken driving and said (pp. 328–329): " The provision is ' it shall be unlawful for *any person* * * * to operate a motor vehicle while under the influence of intoxicating liquor

\*   \*   \* ' Neither the title of the act nor the language of this section indicates in the slightest degree that the legislature intended to limit its application. In two other subsections of section 620, the legislature clearly expresses such a limitation. We must assume that they did so advisedly and that if they had intended the same restriction to apply to subsection (f), they would have used the same words, ' upon the highways '. Finally the unquestioned necessity for the general prohibition against drunken drivers supports these conclusions.''

Other cases to the same effect are *State* v. *O'Grady* (19 N. J. Mis. Rep. 559) ; *Commonwealth* v. *Campbell* (28 Pa. D. & C. 260), and the lone New York decision which I have been able to find on this point, *People* v. *Rue* (166 Misc. 845).

Judicial notice may well be taken of the fact that enlightened zoning restrictions are more and more requiring property owners, both business and residential, to provide adequate off-street parking facilities for motor vehicles and it would be a dangerous determination to read into the instant statute a limitation upon its construction so that one who operated an automobile in such off-street facilities in an intoxicated condition could not be punished therefor. Similarly, if the construction contended for by the defendant should be upheld, the attendant in a public garage, moving the automobiles around from place to place therein, could operate the same while in an intoxicated condition without being subject to the provisions of this statute. Many other similar instances could readily be cited.

Unless compelled to do so by higher authority this court refuses to so interpret the statute as to emasculate its salutary provisions for the protection of the public.

The decisions cited by the defendant are not in point. *Zielinski* v. *Lyford* (175 Misc. 517) and *Catalano* v. *Maddux* (175 Misc. 24) deal with section 52 of the Vehicle and Traffic Law, which provides for the service of a summons upon a nonresident by serving the Secretary of State. That section has been construed so as to limit service of the summons upon the Secretary of State to those cases where the operator was using his motor vehicle upon a public highway, but the *ratio decidendi* therefor is that the use of the public highway, perforce the statute, is deemed equivalent to an appointment by such nonresident of the Secretary of State to be his true and lawful attorney to accept service of process. They are, therefore, not in point here.

In *People* v. *Strauss* (260 App. Div. 880) the court reversed a conviction under this section because the record was '' barren

of proof that he [defendant] operated the motor vehicle in question while intoxicated."

In *People* v. *Koch* (250 App. Div. 623) the judgment of conviction was reversed and the complaint dismissed because the evidence clearly showed that the defendant became intoxicated from indulging in an overdose of a headache remedy and not from deliberately imbibing alcoholic liquor or other intoxicating agents. *Weeks* v. *Byrne* (33 N. Y. S. 2d 65) is inapplicable because it deals with section 83 which is contained in article VI of the Vehicle and Traffic Law and which by section 80 thereof provides that " The provisions of this article shall apply to *highway traffic* " (emphasis ours).

This court is convinced that under subdivision 5 of section 70 of the Vehicle and Traffic Law the *place* of occurrence, whether public or private, is immaterial but even if he entertained a reasonable doubt with regard to that interpretation he would be compelled to give the benefit of that doubt on the law to the People. " While the defendant under our criminal procedure is entitled to the benefit of every reasonable doubt on the facts, the People should be entitled to any reasonable doubt a trial judge may have upon the law for, if he makes a mistake on the law, the People have no opportunity or method of reviewing his ruling, as strange as it may seem to us in this enlightened day. The defendant, for a wrong ruling, may always appeal the case for review to a higher court; the People have no such privilege, except as hereinafter stated. The trial justices in criminal cases, therefore, should bear this in mind when ruling upon points of law." (Chief Judge CRANE in *People* v. *Reed*, 276 N. Y. 5, 9.)*

Since in this case it was almost conceded, and in any event was found by the court beyond a reasonable doubt, that the defendant was operating the motor vehicle in question while in intoxicated condition, he is found guilty of the charge set forth in the complaint insofar as it deals with the operation of the motor vehicle in the parking lot in question. The defendant is directed to appear for sentence before this court on the 21st day of April, 1952.

---

* Chapter 832 of the Laws of 1942, amending the Code of Criminal Procedure (§ 518, subd. 3) does not meet the situation here presented for it only adds the right of appeal on behalf of the People from a dismissal " at any stage of the action  *  *  *  on a ground other than the insufficiency of the evidence adduced at the trial ". In other words, a *pleading* dismissal can now be appealed from even if such dismissal takes place after the trial has begun; however, there is still no right of appeal from a dismissal granted on the ground that *as a matter of law* the proof is insufficient to establish a crime.