No. 15-1044 – *Patricia S. Reed v. Joshua D. Beckett*

**FILED**

**November 28, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

BENJAMIN, Justice, dissenting:

The most solemn duty of an American court lies in its pledge to protect the rights and liberties of private citizens from encroachment by the State. Here, the Majority not only badly misread applicable statutory law, it also sanctioned the infringement of two of our most basic natural rights: the right to do what one wants to do in the privacy of one's estate so long as another is not harmed and the right to be left alone. As trustees of the wisdom and vision of our founders, this Court failed mightily.

It is unquestioned that Joshua Beckett's use of his property was a matter of his own free choice. That it may be said that operating an all-terrain vehicle ("ATV") exclusively on one's private property, *i.e.*, the family farm, after having consumed alcohol was a "stupid" use of the property misses the point. So long as Mr. Beckett did not infringe upon the rights of others or put others at risk, it was his choice to act "stupidly." As set forth by Justice Potter Stewart:

> The right to enjoy property without unlawful deprivation, no less than the right to speak or the right to travel, is in truth, a "personal" right . . . . In fact, a fundamental interdependence exists between the personal right to liberty and the personal right in property. Neither could have meaning without the other.

*Lynch v. Household Fin. Corp.*, 405 U.S. 538, 552 (1972).

1

The essence of our rights lies not in words on a paper, but in their full realization from the enjoyment we experience in the pursuit of our daily affairs.[1]  Indeed, it is the use of one's estate from which life and liberty take form.[2]  In classic Jeffersonian thought, embodied in the opening sentences of the Declaration of Independence, the legitimate end of government is to protect the private realm whereby citizens may freely embrace their natural rights, not to intrude into such private estates thereby frustrating the exercise of such rights.[3]

_____

[1]      [I believe] that a right to property is founded in our natural wants, in the means with which we are endowed to satisfy these wants, and the right to what we acquire by those means without violating the similar rights of other sensible beings; that no one has a right to obstruct another, exercising his faculties innocently for the relief of sensibilities made a part of his nature . . . .

Letter of Thomas Jefferson to P.S. DuPont de Nemours, April 24, 1816, *Writings*, v.10, p.24.

[2] The realization of liberty lies in terms of non-interference by public authorities in the lives of citizens.  This concept, essential to our nation's founding and our Virginia heritage, derives from the political thoughts of John Locke, Adam Smith, George Mason, Thomas Jefferson, James Madison, and our other Founders.  The Founders firmly believed that the human right to private property had to be protected as the basis for individual liberty, a free society and a free economy.  The limitation on state power, being so clearly linked to liberty, derives from our natural rights (*i.e.*, the inalienable rights that are independent of and antecedent to the institutions of men and governments—thereby not being subject to the whims or wants of such institutions) and is embodied in our Declaration of Independence, the United States Constitution, the Constitution of West Virginia, the Virginia Declaration of Rights, and the Constitution of Virginia.

[3] This justification for government by Jefferson echoes the moral philosophy of John Locke, in his *Second Treatise on Government* (1690).  In a letter, Jefferson wrote:

Our legislators are not sufficiently apprized [sic] of the rightful limits of their power; that their true office is to declare and enforce only our natural rights . . .  and to take none of them from us.  No man has a natural right to commit

2

It is from this proposition of natural law, upon which our society is founded, that one has the unfettered right to act as he will in the privacy of his home and property, whether that be smart or stupid, save only that he be competent and that he not infringe the rights of others.[4]  The West Virginia Legislature, in expressly limiting by definition the reach of West Virginia Code § 17C-5-2(e) (2010), understood this.  The Majority of this Court did not.

Driving under the influence of an intoxicant may be a serious threat to the individual rights of other citizens.  The power of the State to monitor and regulate the

---

> aggression on the equal rights of another; and this is all from which the laws ought to restrain him . . . and the idea is quite unfounded, that on entering into society we give up any natural right.

Letter of Thomas Jefferson to Francis W. Gilmer, June 27, 1816, *Writings*, v. 10, p. 32. Stated differently, without the rights attendant to property, there is no liberty.

[4] The Constitution of West Virginia, at Article III, Section 1 expressly recognizes this Jeffersonian/Lockean view of natural rights whereby life and liberty is realized by the enjoyment of the use of one's property:

> All men are, by nature, equally free and independent, and have certain inherent rights, of which, when they enter into a state of society, they cannot, by any compact, deprive or divest their posterity, namely:  The enjoyment of life and liberty, with the means of acquiring and possessing property, and of pursuing and obtaining happiness and safety.

When the use and enjoyment of one's property is unreasonably constrained, it logically follows that the natural rights of life and liberty become severely restricted.

behavior of a given citizen with respect to such driving derives from the obligation of the State to protect the health, safety and general welfare rights of its other citizens. This is commonly referred to as the "police power" doctrine and is based in the Tenth Amendment of the United States Constitution as restricted by the Privileges and Immunities Clause made applicable to the various states by the Fourteenth Amendment.[5] In other words, government control and regulation over an individual's private use and enjoyment of his or her property must be reasonable and have a clear relation to some legitimate purpose which protects the rights of other citizens; otherwise, the State's actions constitute an unwarrantable invasion of that individual's natural rights.

Proper governmental action is calculated to prevent a conflict of rights and to insure to each citizen the uninterrupted enjoyment of his or her own rights, so far as is reasonably consistent with a like enjoyment of rights by others. Thomas M. Cooley, *A Treatise on the Constitutional Limitations Which Rest Upon the Legislative Power of the States of the American Union* 572 (Little, Brown & Co. ed., 1868). Thus, the exercise of one's rights should not be restricted by the state unless such a restriction is both necessary and proper. West Virginia's Legislature understood this in enacting West Virginia Code § 17C-5-2(e) (2010), by utilizing language, defined elsewhere in the statutory section, which expressly *excludes* Mr. Beckett's private behavior herein from coverage under the statute.

---

[5] Article III, Section 3-3 of the Constitution of West Virginia provides: "Government is instituted for the common benefit, protection and security of the people, nation or community."

West Virginia Code § 17C-5-2(e) (2010), in effect at the time Mr. Beckett operated his ATV, proscribes any intoxicated person from driving "a vehicle in this state." At issue is whether Mr. Beckett's conduct comes within this language. It does not. The Majority focuses exclusively on the phrase "in this state," misapplying its statutory definition. The Majority fails completely to consider the statutory definition of the term, "vehicle." This was error upon error.

The Majority correctly looks to West Virginia Code § 17C-5-2a(a) to define "in this state." In so doing, however, the Majority ignores the clear import of the Legislature's limiting language that for there to be applicability of West Virginia Code § 17C-5-2(e), the use of a subject vehicle must be in a location "nonetheless open to the use of the public for purposes of vehicular travel." By the addition of this instructive language, the Legislature understood the limitations of its police powers, consistent with the rights of private property owners. Mr. Beckett's use of his ATV was purely private, on private family land, for purely private purposes. There is no evidence in the record whatsoever that this private use had any impact on other citizens. Likewise, there is no evidence that Mr. Beckett's behavior in any way would have any adverse impact on any other citizen. To the extent that the Department of Motor Vehicles ("DMV") contends that the State has an interest in regulating or constraining Mr. Beckett's private behavior on his private family farm, it failed to introduce such evidence by which a consideration of reasonableness for state action might be made. An interest in saving Mr. Beckett from the

5

consequences of his own stupidity, though admittedly a tempting endeavor, is insufficient

to overcome Mr. Beckett's right to do as he pleases.

The Majority opinion furthermore fails because, by statutory definition, an

ATV does not come within the definition of "vehicle" under West Virginia Code § 17C-5-

2(e) ("drives a *vehicle* in this state"). The term, "vehicle," is defined by West Virginia

Code § 17A-1-1(a) (2010) as "every device in, upon or by which any person or property *is*

or *may* be transported or drawn *upon a highway*." (Emphasis added). Here, Mr. Beckett

was not transported or drawn upon a highway, so the term "is" is not applicable. The term

"may," being permissive, requires that the transportation device may properly be used upon

a highway. By statutory definition, however, an ATV is neither designed for nor permitted

to be used on highways. West Virginia Code § 17A-1-1(ii) defines an "ATV" as "any

motor vehicle *designed for off-highway use*." (Emphasis added). Furthermore, West

Virginia Code § 17F-1-1(a) (2004) provides:

> No all-terrain vehicle may be operated in this state:
> (1) On any interstate highway except by public safety
> personnel responding to emergencies; or
> (2) On any road or highway with a center line or more
> than two lanes except for the purpose of crossing the road,
> street or highway . . . .

An ATV may not be used upon a highway—a necessary requisite to applicability of West

Virginia Code § 17C-5-2(e) to the conduct at issue. While Mr. Beckett's use of an ATV on

his family farm after consuming alcohol may be condemned on any number of moral and

health-related grounds, his use of the ATV simply is not covered by the statute for DUI purposes.

To support its expansive creativity, the Majority asserts that its research, listed in a footnoted string citation, shows that "nearly two dozen jurisdictions" support its logic. A careful review, however, reveals that none of the cited cases, save one, supports the Majority's conclusions that the private use of an ATV by an individual on his private property while intoxicated is criminal conduct.[6]

---

[6] *Madden v. State*, 555 S.E.2d 832, 834 (Ga. Ct. App. 2001), involved an individual driving a car trying to run down a pedestrian in a mobile home park. *State v. Allen*, 431 S.E.2d 563, 564 (S.C. 1993), involved an individual driving a truck in another person's private driveway. *Sanders v. State*, 846 S.W.2d 651 (Ark. 1993), involved a private roadway open to public use. *People v. Malvitz*, 14 Cal. Rptr. 2d 698, 701 (Cal. App. Dep't Super. Ct. 1992), involved a private paved road in a storage area open to members of the storage area. *Chilcutt v. State*, 544 N.E.2d 856, 858–59 (Ind. Ct. App. 1989), set forth that the "facts reveal that there were third parties who were permitted on this property, an example being the owners of the property, who could have been endangered by defendant's operation of the vehicle." *Allen v. Girard*, 745 P.2d 192, 194 (Ariz. Ct. App. 1987), involved an individual "driving on the wrong side of the road in La Reserve, an Estes Company subdivision development project. It is undisputed that La Reserve was private property at the time, although it was not appellant's property." *State v. MacDonald*, 527 A.2d 758, 759 (Me. 1987), involved the operation of a motor vehicle in a private driveway. *Zink v. State*, 448 So. 2d 1196, 1197 (Fla. Dist. Ct. App. 1984), involved a trespassing individual "'spinning donuts' in the dirt of a construction site on private property owned by Alton Box Company. He had no possessory or proprietary interest in the property." *Dayhoff v. State, Motor Vehicle Div*., 595 P.2d 1051, 1053 (Colo. App. 1979), involved a parking lot located on private property used by the public. *People v. Guynn*, 338 N.E.2d 239, 241 (Ill. App. Ct. 1975), stated that "[t]here is nothing in the record to indicate the circumstances surrounding defendant's arrest. There is no showing where defendant was when arrested or what he was doing at that time." *State v. Layssard*, 310 So. 2d 107, 110 (La. 1975), set forth that a

7

witness was looking out his front door when he caught a glimpse of a vehicle pass on the road in front of his house, heard the noise of gravel, and immediately heard the sound of a vehicle striking something. He looked up and saw the defendant behind the wheel of his truck, having crashed through a fence and into a utility line and into a tree in a neighbor's yard across the street.

*State v. Bruce*, 231 A.2d 107, 109 (Vt. 1967), set forth that "[t]he attendant at the station first saw the respondent's car as it was pulling off the road and entering the driveway into the filling station." *Farley v. State*, 170 So. 2d 625, 627 (Miss. 1965), set forth that "[a]ctually the state's evidence showed that the defendant, while under the influence of intoxicating liquor, not only drove the motor vehicle down the driveway, but that he also drove it onto the right-of-way of the highway and to the edge of the pavement." *State v. Piette*, 16 Conn. Supp. 357, 357 (Conn. Super. Ct. 1949), set forth that "it would appear that the operation [of the vehicle] was upon property which had at least a quasi-public use." *State v. Weston*, 202 S.W.2d 50, 53 (Mo. 1947), set forth that

> [a] highway patrolman saw the appellant drinking in the Womack Hotel about 11 o'clock in the morning. The city marshal of Fredericktown testified that he saw the appellant drive an automobile from in front of the Womack Hotel, on the south side of the courthouse, towards the east. A state liquor officer saw him get out of the automobile in front of Hunter's Cafe. At that time he staggered as he walked. In a few minutes the city marshal arrested him.

*State v. Dowling*, 216 N.W. 271 (Iowa 1927), set forth that the defendant was driving "over and upon the streets of Webster City, Iowa." *Gray v. Commonwealth*, 477 S.E.2d 301, 302 (Va. Ct. App. 1996), involved a privately owned parking lot open to the public. *Locklear v. State*, 614 A.2d 1338, 1341 (Md. Ct. Spec. App. 1992), involved a trespasser who "grab[bed] a white female . . . by the hair, dragging her towards the Dodge truck." The defendant "had no permission to drive his truck on the Genstar property." *Id.* *State v. Frank*, 442 N.E.2d 469, 470 (Ohio Ct. App. 1981), set forth that "the defendant-appellant conceded that she had been operating a late model automobile on the parking lot of a shopping center in the early morning hours of April 26, 1980." *Commonwealth v. Campbell*, 28 Pa. D. & C. 260, 260 (1936), set forth that "[t]he facts are that on June 13, 1936, defendant, while under the influence of intoxicating liquor, drove his car for a distance of about two blocks on the West Hill road located in Snowden Township." This was a privately owned road maintained by a coal company that was used by many other people, including a settlement known as Montour Ten Patch. *Id.*

One cannot make any conclusion as to the precedential effect of *State v. Watson*, 787 P.2d 691, 692 (Haw. 1990), because there was no factual development in the written

By no measure does the Majority opinion find legitimacy in constitutional, statutory, or common law. While the rights with which we are endowed are scarcely a topic of measured circumspection in our fast moving society, it falls to our courts to be vigilant that such natural rights are protected. This includes, as here, the importance of protecting the right to the private use and enjoyment of one's private property.

In 1816, Jefferson wrote to his friend, Samuel Kercheval, a Virginia writer: "The true foundation of republican government is the equal right of every citizen, in his person and property, and in their management." Letter of Thomas Jefferson to Samuel Kercheval, June 12, 1816, *Writings*, v. 10, p. 39. This quotation crowns the courtroom of the Supreme Court of Appeals of West Virginia. How ironic.

---

opinion. The only case which might lend support to the Majority opinion is *Lynch v. Commonwealth*, 902 S.W.2d 813, 814 (Ky. 1995), wherein the

> Appellant had finished work and returned to his home situated on agricultural property which is reached by a private driveway (one-quarter of a mile or more) from the public road to the dwelling. A confrontational argument at the home ensued, which resulted in the placing of a 911 telephone call. Appellant, while continuing to drink intoxicants, then operated his motor vehicle from the dwelling to approximately halfway down the drive, where he encountered two police vehicles which had entered the driveway.

9