Richard Allen LOCK, Elden Mavine Seaman, Dennis Threadgil, Jimmy Williams, Don Pyle and Bobby Lee Ray, Petitioners,

v.

Allen FALKENSTINE, Judge of the County Court, Blaine County, Okla., Respondent.

No. A–13307.

Court of Criminal Appeals of Oklahoma.

March 13, 1963.

Sid White, Oklahoma City, for petitioners.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for respondents.

NIX, Judge.

This is an original proceeding wherein the Petitioners seek a Writ of Prohibition directed to Allen Falkenstine, the County Judge of Blaine County, to prevent him from proceeding to trial in a case where defendants are accused of fighting gamecock. Wherein it is charged that to so do is a violation of Title 21 O.S.A. § 1682, which provides:

> "Every person who maliciously, or for any bet, stake, or reward, instigates or encourages any fight between animals, or instigates or encourages any animal to attack, bite, wound or worry another, is guilty of a misdemeanor."

■ THE COURT OF CRIMINAL APPEALS, IN DETERMINING THIS ISSUE, IS NOT CHARGED WITH THE DUTY OR RESPONSIBILITY OF EXPRESSING ITS OPINION AS TO THE MORALITY OF THE EVENT OR THE PEOPLE PARTICIPATING IN FIGHTING COCKS.

There are those who would refer to it as an age old sport, dating back 400 years before Christ, and dignified by such participants as George Washington, Andrew Jackson, Henry Clay, and Benjamin Franklin, all of whom were purported to relish cock fighting. On the other hand, there are those who consider it a bestial, barbaric and inhuman act, saying that those who engage in such amusement are destitute of human feelings.

This highly controversial subject has been discussed pro and con for centuries. It is reported that Abraham Lincoln said to a group of citizens, who wished to wipe out gamecock fighting by Federal Law: "As long as the Almighty permitted intelligent men, created in his image and likeness, to fight in public and kill each other while the world looks on approvingly, it's not for me to deprive the chickens of the same privilege."

THE DIVERSITY OF OPINIONS RELATIVE TO GAMECOCK FIGHTING IS OF LITTLE CONCERN TO THIS COURT, WE ARE CONCERNED ONLY WITH THE QUESTION OF WHETHER OR NOT OUR STATUTE IS SO DESIGNED AS TO PROHIBIT IT UNDER PENALTY OF LAW.

The petition herein questions the constitutionality of the Statute heretofore cited, alleging that it is not sufficiently definite and certain in its description of the conduct prohibited and penalized to enable one of ordinary experience and understanding to know the law and to avoid violating the same.

The Attorney General does not herein question their right to obtain relief by Prohibition, but is content to assert that "gamecocks" are *animals* and therefore are covered by the Statute.

■ This Statute has been given earnest consideration by the Court in an attempt to place upon it the proper interpretation and determine just what the Legislature intended to include by employment of the word "Animals". The Court is thoroughly cognizant of the fact, that, biologically speaking, every living creature is presumed to be of the animal species and several courts have construed numerous types of fowl to come within the term. Before the

science of Biology was in existence, a distinction was made between living creatures in the Holy Scriptures, and often referred to as "beasts of the fields, fish of the sea, and fowls of the air". In the beginning, it was said in Genesis 1.26:

"And God said, Let us make man in our image, after our likeness: and let them have dominion over the fish of the sea, and over the fowl of the air, and over the cattle, and over all the earth, and over every creeping thing that creepeth upon the earth."

And, in Genesis 2.19:

"And out of the ground the Lord God formed every beast of the field and every fowl of the air * * *."

The Statute in question was enacted by Dakota in 1887, adopted by the Oklahoma Territory in 1890, yet it is presented to this Court as one of first impression. Rarely have people been prosecuted under this Statute, and the Court has not been called upon by way of appeal for an interpretation of the Law or a Declaration as to its validity.

In determining the constitutionality of a Statute, we are guided by previous decisions of this and other jurisdictions. In the case of Connally v. General Const. Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322, wherein the Court said:

"That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law; and a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law."

In United States v. Brewer, 139 U.S. 278, 11 S.Ct. 538, 35 L.Ed. 190, the Court said:

"Laws which create crime ought to be so explicit that all men subject to their penalties may know what acts it is their duty to avoid. * * * Before a man can be punished, his case must be plainly and unmistakably within the statute."

See also, United States v. Lacker, 134 U.S. 624–628, 10 S.Ct. 625, 33 L.Ed. 1080.

Also, it is stated in Ruling Case Law, Volume 25, § 64:

"Statutes which create and provide for the punishment of criminal offenses should be so clear and explicit that all persons of ordinary intelligence who are subject to these penalties may understand their provisions. If the meaning of a criminal Statute cannot be Judicially ascertained, or if in defining a criminal offense, it omits certain necessary and essential provisions which go to impress the acts committed as being wrongful and criminal, the courts are not at liberty to supply the deficiency or undertake to make the Statute definite and certain."

The language adopted in the case of United States v. Reese, 92 U.S. 214, 23 L.Ed. 563, is highly pleasing to this Court:

"Penal statutes ought not to be expressed in language so uncertain. If the legislature undertakes to define, by statute, a new offense and provides for its punishment, it should express its will in language that need not deceive the common mind. Every man should be able to know with certainty when he is committing a crime. It would certainly be dangerous if the Legislature could set a net large enough to catch all possible offenders and leave it to the courts to step inside and say who could be rightfully detained and who should be set at large. This would, to some extent, substitute the Judicial for the Legislative Department of the Government."

Guided by the "judicial yardstick" created by the rules adopted in the foregoing cases, we approach the Statute's validity.

Is the Statute clear and explicit? Is it certain? Can a man of ordinary intelligence understand it? Does it deceive the common mind? Does a person of ordinary intelligence know when the Statute is being violated? Can the Court judicially determine the Legislative intent?

The Statute appears on its face to prohibit instigating fights between animals, whereby one may attack, bite, wound, or worry another. Then the question inevitably arises: Is a "gamecock" an animal? Though we respect those courts that have held that various kinds of fowl fall within that category, and likewise agree that the science of Biology holds them to be such; however, we are charged with the duty of concluding whether the man of "ordinary intelligence" would consider a rooster an animal. Surely, we would not expect a man of ordinary intelligence to fathom the law on the same footing as a learned Judge, or be as well versed in genetics as a student of biology. We feel that the Statute is *not* explicit, nor is it certain. And that persons of ordinary intelligence would have difficulty understanding what it attempts to prohibit.

In the State of Arizona, a person was charged with cockfighting under the "Cruelty to Animals" statute. The Supreme Court of Arizona in State v. Stockton, et al., 85 Ariz. 153, 333 P.2d 735, 736, 737, had this to say:

"The solution of the questions presented must be found in the interpretation of the statute above quoted. Biologically speaking, there can be no doubt that birds or fowls are animals and where the intent is manifest in the language of a statute the same may be and has been held to be true in the field of law. In arriving at the intention of a statute resort will be had to the words, context, subject matter, effects and consequence, spirit and reason (or purpose) of the law, etc. Isley v. School District No. 2 of Maricopa County, 81 Ariz. 280, 305 P.2d 432. When the legislative intent is ascertained by the application of the cardinal rules of interpretation that intent must be followed. Ernst v. Collins, 81 Ariz. 178, 302 P.2d 941.

"[3] After a careful study of the above statute we confess we are unable to find from the words, context, subject matter, spirit or purpose of the act a clear indication of an intent on the part of the legislature to include a gamecock in the *category of animals,* or to make it a crime for a person or persons to conduct a cockfight wherein such gamecocks are subjected to needless suffering. To so interpret the above statute in accordance with the contentions of the State would render it vague, indefinite and uncertain and therefore in violation of the due process clause of Art. 2, § 4 of the State Constitution, A.R.S."

If the Statute is to be construed literally, it would be virtually impossible to exaggerate its limitations. These are some of the things that a literal interpretation would prohibit, and make unlawful:

A boy urging his beagle hound to catch a rabbit;

The rancher hunting coyotes with stag hounds;

Those who hunt fox or wolves with hounds;

The mountain man who traps and catches wild hogs with dogs for food for his family;

The farmer who dogs a breachy sow from his corn patch;

Even the rural widow, who erects a martin box to encourage those birds to occupy the same and make war on hawks coming within their territory.

One can readily see the confusion that would exist if the Court attempted to interpret the Statute as to what it covers and what it does not cover. The legislature in its wisdom, surely could find the lan-

guage to say in certain terms what the Statute is intended to prohibit. The Oklahoma Statute makes no attempt to define animals, yet the legislature has described the species that come under certain provisions; and the Court is at a loss to ascertain why that was not done in the Statute before us.

In Title 21 O.S.A. §§ 1716–1719, which pertain to Larceny, the legislature makes a distinction between "domestic animals" and "domestic fowls". Section 1716 relates to the Larceny of any "horse, jackass, jennet, mule, cow or hog." It is provided in the section that the word "horse" as used in this act, shall include all animals of the "equine species", and the word "cow" shall include all animals of the "bovine species". It was later amended to include sheep or goats and they are not included in the definition of "bovine species". Dogs are not included in the act, but separate sections, Title 21 O.S.A. §§ 1717–18 deal with dogs. Dogs and cats are dealt with as "domestic animals" in Title 21 O.S.A. § 1691; and Title 21 O.S.A. § 1684 deals with trapping "birds" in a cemetery.

So it is apparent the Legislature in the past has portrayed the ability to identify the species of animals it has reference to when enacting a Statute.

The Statute in question was first adopted 76 years ago when men were labeled pioneers engaged in building a country during a time when "cock fighting" was not the vogue, and it is highly doubtful if an intent to prohibit the fighting of gamecocks entered the author's mind. It would be more practical to assume that most men of that period kept a dog and was proud of its fighting ability, and the law was designed to prohibit instigating fights between dogs. However, the Court should not be made to speculate and a literal construction of "instigating a fight between animals whereby one may attack, bite wound, or worry another" includes so many offenses as to render the Statute an absurdity. In the case of State v. Buford, 65 N.M. 51, 331 P.2d 1110 in determining whether gamecock fighting came within the Cruelty to Animals Statute, the Court said:

"Thus we reach the conclusion that the type of cruelty to animal statute we are construing was not passed with the intention of prohibiting such sports as cock fighting. We further believe that, to so construe the statute, would open up many other activities to prosecution, though they are not within its spirit. For example, using live minnows to bait hooks.

" 'These statutes are the outgrowth of modern sentiment. They spring originally from tentative efforts of the New England colonies to enforce imperfect but well recognized moral obligations. * * * Society could not long tolerate a system of laws which might drag to the criminal bar every lady who might impale a butterfly, or every man who might drown a litter of kittens.' Grise v. State, 37 Ark. 456, annotated in 3 Eng. Ruling Cases 149.

"We deem any prohibition of cockfighting must come from the legislature and hold the judgment should be affirmed."

It is most difficult to arrive at the Legislative intent of the Statute in question, either from the words, context, subject matter, effects or consequences; or spirit or reasoning of the law without undue speculation. Research on the question reveals forty-one states, Hawaii, District of Columbia, and Alaska have specific statutes against fighting gamecocks. We feel that our Legislature is capable of enacting a specific law if it so desires, free of uncertainty, understandable by people of ordinary intelligence; and sufficiently clear and explicit as to remove all doubt.

■ We are compelled to arrive at the conclusion that the Statute is invalid.

It is not clear or explicit. It is uncertain. It does not apprise a man of ordinary intelligence of what crime subjects him to penalty, and is not subject to judicial interpretation without undue speculation.

The Legislature is now in session and if it so desires, it can make a direct approach to the act complained of by making cock-fighting an offense against the State. It will then be understood to be a criminal offense by the ordinary layman and he will then know what is and what is not forbidden by law.

The Writ of Prohibition is hereby granted, and the petitioners ordered discharged.

BUSSEY, P. J., and JOHNSON, J., concur.