No. 46,951

STATE OF KANSAS, ex rel. VERN MILLER, Attorney General of Kansas, *Appellee*, v. VERNON D. CLAIBORNE, *Appellant.*

(505 P. 2d 732)

Opinion filed January 20, 1973.

*Hugh H. Kreamer*, of the firm of Breyfogle, Gardner, Martin, Davis & Kreamer, of Olathe, argued the cause and was on the brief for the appellant.

*James A. Wheeler*, county attorney, argued the cause, and *Vern Miller*, attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: This action differs from the norm as it delves into a subject which, in days of yore, seemingly did not disturb the good people of this prairie state.

We are told the present problem developed when the defendant, Vernon D. Claiborne, a resident of Johnson county who engages in the business of raising and fighting gamecocks, was advised by statements of the attorney general that cockfighting was illegal in Kansas, as violating the provisions of K. S. A. 1972 Supp. 21-4310, a statute proscribing cruelty to animals. Mr. Claiborne, believing the attorney general to be in error, instructed his counsel to advise the county attorney of Johnson county that he intended to fight gamecocks on his farm. Thereupon, the state commenced the instant action, on relation of the attorney general, for the purpose of obtaining a declaratory judgment pursuant to K. S. A. 60-1701. The trial court, after an evidentiary hearing, held in effect that cockfighting came within the prohibition of the statute. Claiborne has appealed from that ruling.

The basic question to be decided on appeal, although variously expressed in the defendant's statement of points, boils down to this, in our view: Does cockfighting fall within the prohibition of K. S. A. 1972 Supp. 21-4310 as constituting cruelty to animals? For present purposes the statute provides:

"(1) Cruelty to animals is:
  (a) Subjecting any animal to cruel mistreatment; or
  (b) Having custody of any animal and subjecting such animal to cruel neglect."

By way of background, in which we were woefully deficient before this appeal was processed, we find it written in that tome of wisdom, the Encyclopedia Britannica, that the sport was popular in ancient times in India, Persia, China and other Oriental countries, whence it was introduced into Greece and the Isles of the Aegean Sea. Cockfighting was enthusiastically embraced by the Romans, after some preliminary hesitancy, and was probably transported by Roman Legions into England where it was embraced by members of the royalty, becoming known as "the royal diversion."

At an early date in American history cockfighting made its debut in this virgin land, and it is recorded that George Washington, Thomas Jefferson and Alexander Hamilton were devotees of the sport. Frowns, however, were cast upon the diversion in some quarters especially those from the New England area. We find it said that Abraham Lincoln, in his New Salem days, umpired cockfights and we read in *Lock v. Falkenstine,* Okl. Cr., 380 P. 2d 278, that it is reported Abraham Lincoln said to a group of citizens, who wished to wipe out gamecock fighting by federal laws: "As long as the Almighty permitted intelligent men, created in His image and likeness, to fight in public and kill each other while the world looks on approvingly, it's not for me to deprive the chickens of the same privilege."

Thinking has changed somewhat from the days of Henry VIII, who added a royal cockpit to his palace at Whitehall, and a majority of the states of the union appear to have enacted specific statutes banning the so-called sport. Kansas, however, has not seen fit to do so, and we were somewhat surprised to be advised upon oral argument that some eighteen or twenty cockfight pits are currently extant within the confines of this state. From territorial times until as late as July 1, 1970, cockfighting on Sunday was declared to be a misdemeanor along with horse racing, and playing at cards or any

game of any kind. (See Terr. Stat. 1855, ch. 53, § 33; K. S. A. 21-954.) By implication, cockfighting on any day of the week except Sunday thus was recognized. At its 1969 session the legislature repealed K. S. A. 21-954, to become effective July 1, 1970, thus removing the Sunday ban against cockfighting, horse racing and card playing without enacting any statute in its stead, and we thus assume that those three forms of entertainment now are lawful on any day of the week.

The specific question posed in this case, *i. e.*, does cockfighting come within the prohibition of 21-4310, is an open one in Kansas. The record cites several letter opinions prepared by various attorneys general responding to inquiries concerning the legality of cockfighting. Without exception the opinions cite the statute prohibiting cockfighting on Sunday, and some contain the comment that the "sport" *may* violate the statute proscribing cruelty to animals. Most of the opinions call attention to the fact that wagering on cockfights would be a violation of Kansas gambling laws.

In an early Massachusetts case, *Commonwealth v. Tilton*, 8 Metcalf (Mass.) 232, 3 English Ruling Cases 149, the court said that cockfighting was prohibited by the principles of the common law as a cruel and barbarous sport. However, there apparently is no American decision holding that permitting or causing gamecocks to fight each other constitutes a violation of cruelty to animal statutes. (82 A. L. R. 2d Ann: Cruelty to Animals, p. 821) and the courts of two jurisdictions have expressly held that cockfighting was not prohibited by statutes of that nature.

In *State v. Buford*, 65 N. M. 51, 331 P. 2d 1110, the Supreme Court of New Mexico concluded that the statute in force in that state was of a type which would not have been passed with the intention of prohibiting a sport such as cockfighting. The New Mexico statute forbids any person to torture, torment, deprive of necessary sustenance, cruelly beat, mutilate or overdrive any animal or unnecessarily fail to provide the same with proper food or drink, or cruelly work or drive the same when unfit for labor, and is analogous, in such respects, to statutes long in force in Kansas.

An Arizona statute, substantially the same as that in New Mexico, has been held to be inapplicable to cockfighting. (*State v. Stockton*, 85 Ariz. 153, 333 P. 2d 735.) The essence of the court's opinion is expressed in the following language:

"After a careful study of the above statute we confess we are unable to find

from the words, context, subject matter, spirit or purpose of the act a clear indication of an intent on the part of the legislature to include a gamecock in the category of animals, or to make it a crime for a person or persons to conduct a cockfight wherein such gamecocks are subjected to needless suffering. To so interpret the above statute in accordance with the contentions of the State would render it vague, indefinite and uncertain and therefore in violation of the due process clause of Art. 2, § 4 of the State Constitution, A. R. S." (p. 155.)

A case with similar overtones arose in Oklahoma where an original proceeding was filed for a writ of prohibition to prevent the county judge from proceeding to trial in a case where the defendants were accused of fighting gamecocks. (*Lock v. Falkinstine,* supra.) The statute provided that every person who maliciously, or for any bet, instigated or encouraged any fight between animals or instigated or encouraged any animal to attack, bite, wound or worry another, was guilty of a misdemeanor. The attorney general, in opposing the petitioners' lawsuit, asserted that gamecocks are animals and that they were covered by the statute.

In concluding the statute was invalid, the appellate court said it was not sufficiently clear to apprise a man of ordinary intelligence as to the crime for which he would be subject, and that the statute was not susceptible of judicial interpretation without indulging in undue speculation. We find the gist of the decision in the Syllabus by the Court, § 4:

"Statute providing punishment for 'instigating fights between animals whereby one may attack, bite, wound or worry another' evinced no clear intent on the part of the Legislature to include gamecock fighting in the term 'any animal' as used therein; and to interpret Statute as making it a crime to conduct cockfights, would be to render it vague, indefinite, and uncertain and therefore, in violation of due process."

We incline toward the views expressed in the foregoing cases, even though we must recognize that biologically speaking a fowl is an animal; a sentient, animate creature as distinguished from a plant or an inanimate object. In accepting the rationale underlying the New Mexico and Arizona decisions, we are influenced by a number of considerations.

First of all we harbor the opinion that in the common everyday experience of mankind chickens are seldom thought of as animals; rather, they are birds, with avian characteristics, in contrast to beasts of the field. We tend to agree with the two professors who testified, one from Kansas State University, the other from Okla-

homa State, that persons of common intelligence would consider a chicken a bird, not a hair-bearing animal.

Secondly, Kansas statutes proscribing cruelty to animals have traditionally been directed toward protection of the four-legged animal, especially beasts of the field and beasts of burden. Terr. Stat. 1855, ch. 53, § 38 prohibited the cruel maiming, beating or torture of any horse, ox or other cattle. This statute was incorporated without substantial change in G. S. 1868, ch. 31, § 262. Successor statutes were enacted in 1889 (L. 1889, ch. 130 §§ 1 & 2), which later became K. S. A. 21-1201 and 1202. These statutes are somewhat lengthy, but in brief summary they forbade the overloading, overdriving, overworking, torture, beating, underfeeding or cruel killing of an animal. K. S. A. 21-1201 and 1202 remained on the books until K. S. A. 1970 Supp. 21-4310 became effective on July 1, 1970.

From a practical standpoint there has been little or no judicial construction of these statutes. The only case to have reached the appellate level, so far as we can tell, is *State v. Patterson*, 6 Kan. App. 677, 50 Pac. 65, where the court held that in a complaint for overdriving and killing two geldings it was necessary to state the facts showing wherein the defendant overdrove the horses.

In the third place, we deem it of some significance that for well over a century, as we have already pointed out, Kansas prohibited cockfighting only on Sunday, from which an inference may reasonably be drawn that cockfighting was legal on the other six days of the week. Moreover, when at last the Sunday statute was repealed, no statute took its place prohibiting in any way, or at any time, such activities as cockfighting, card playing, or horse racing. From such omission the rationale would be that cockfights might be held seven days a week.

We find nothing in the record from which we can divine a legislative intent to include gaming cocks within the class of animals protected by K. S. A. 1972 Supp. 21-4310. In this respect, the statute is not vague, indefinite or uncertain within the meaning of due process.

We hold no brief for what some persons term the "noble sport of cockfighting." Neither are we called upon to rhapsodize over the spectacle of two game and plucky birds fighting to the death for the edification of human spectators. Ours is but the function of interpreting the law as we find it, and in our opinion, the legislature

has not clearly evinced an intention to include fowls within the prohibitions of K. S. A. 1972 Supp. 21-4310.

If gamecocks or fowl in general, or fish for that matter, are to be brought within the protection of the statute, the legislature is fully competent to do so. It is presently in session and, as was said in *State v. Stockton*, supra, the legislature can "if it so desires make . . . cockfighting an offense against the State. It will then be understood to be a criminal offense by the ordinary layman and he will then know what is and what is not forbidden by the law." (p. 156.)

By way of final comment, let it be distinctly understood that nothing we have said would countenance in any way the use of fighting birds for gambling purposes.

The judgment is reversed with directions to enter judgment for the defendant in accordance with the views herein expressed.