STATE OF HAWAII, Plaintiff-Appellant, *v.* ALEXANDER KANEAKUA, et al., Defendants-Appellees

NO. 5853

HONORABLE ANDREW SALZ, JUDGE

JULY 10, 1979

RICHARDSON, C.J., OGATA AND MENOR, JJ.*

---

*Justices Kobayashi and Kidwell, who heard oral argument in this case, retired from the court on December 29, 1978, and February 28, 1979, respectively. HRS § 602-11 (1978 Supp.) provides: "After oral argument of a case, if a vacancy arises or if for any other reason a justice is unable to continue on the case, the case may be decided or disposed of upon the concurrence of any three members of the court without filling the vacancy or the place of such justice."

OPINION OF THE COURT BY RICHARDSON, C.J.

This case is a consolidation of forty-seven prosecutions for violations of part of Hawaii's cruelty to animals statute, Hawaii Penal Code § 1109(1)(d).[1] The arrests leading to these prosecutions took place in Waianae, Oahu, during the latter part of 1974 and early 1975. A motion to dismiss was filed and, for purposes of the motion, it was stipulated that each of the

---

[1] HRS § 711-1109(1)(d) (1976 Repl.).

defendants had knowingly participated in a cockfight at the time and place charged. The district court found that the statute was unconstitutional and granted the motion.[2] The state appeals.

The only issues presented by this appeal are whether § 1109(1)(d) of the Hawaii Penal Code is so vague or overbroad as to deny defendants due process of law. The statute in question provides:

> *Cruelty to animals.* (1) A person commits the offense of cruelty to animals if he knowingly or recklessly:

> . . . . .

> (d) Sets on foot, or instigates in or does any act towards the furtherance of any act of cruelty to animals.

Hawaii Penal Code § 1100(5)[3] defines *animal* as including "every living creature" while *cruelty* is defined by § 1100(6)[4] as including "every act, omission, or neglect whereby unjustifiable physical pain, suffering, or death is caused or permitted."

## I. VAGUENESS

It is a basic principle of due process that a criminal statute must state with reasonable clarity the acts it proscribes. Our system of laws assumes that a person must choose between lawful and unlawful conduct, so we require that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he or she may act accordingly. *Grayned v. City of Rockford*, 408 U.S. 104 (1972); *State v. Manzo*, 58 Haw. 440, 573 P.2d 945 (1973); *State v. Abellano*,

---

[2] The district court adopted portions of Circuit Judge Walter Heen's opinion in Cr. No. 47107 declaring section 1109(1)(a) of Hawaii's cruelty to animals statute vague and overbroad.

[3] HRS § 711-1100(5) (1976 Repl.).

[4] HRS § 711-1100(6) (1976 Repl.).

50 Haw. 384, 441 P.2d 333 (1968). This court has also recognized that statutes which fail to provide explicit standards are subject to arbitrary application and enforcement. Vague laws impermissibly delegate policy matters to the subjective and *ad hoc* decision making of police officers on the beat, judges, and juries and may result in capricious or discriminatory action. *State v. Kimball,* 54 Haw. 83, 503 P.2d 176 (1972); *State v. Grahovac,* 52 Haw. 527, 480 P.2d 148 (1971).

Appellees' major contention in this case is that the terms "animal" and "cruelty" are vague. These phrases, it is alleged, fail to provide sufficient notice of the limits of the statute's reach in relation to defendants' activity. We do not agree and find that the statute is sufficiently definite to satisfy due process with regard to the charge against these defendants.

As we noted above, "animal" is defined in the Hawaii Penal Code as including "every living creature." Defendants would have us believe that persons of common intelligence could differ as to the meaning of the word and cite cases to the effect that a gamecock is not an animal. *State v. Stockton,* 85 Ariz. 153, 333 P.2d 735 (1958); *Lock v. Falkenstine,* 380 P.2d 278 (Okl. Cr. 1963); *State ex rel. Miller v. Claiborne,* 211 Kan. 264, 505 P.2d 732 (1973). Whatever may be the meaning of the word in other jurisdictions, it is clear here that a gamecock is a living creature and therefore an animal within the statute's definition.

Since we have determined that gamecocks are animals, the only major question left to be resolved is whether defendants' conduct falls within the statute's prohibition. For purposes of this case, defendants have admitted to knowing participation in cockfights.[5] Several factors indicate to this court that cockfighting is among the acts prohibited by § 1109(1)(d).

---

[5] It is common knowledge in our community that a cockfight is a fight to the death between two cocks, each equipped with a metal blade, commonly known as a gaff or spur, attached to one of its legs. As we noted in *In re Application of Pioneer Mill Co.,* 53 Haw. 496, 497 P.2d 549 (1972), a reviewing court may take judicial notice of a fact whether or not the trial court did so.

In our opinion, it is erroneous to read § 1109(1)(d) in a vacuum. Statutory language must be read in the context of the entire statute and construed in a manner consistent with the purpose of the statute. *Pacific Ins. Co., Ltd. v. Oregon Automobile Ins. Co.*, 53 Haw. 208, 490 P.2d 899 (1973). Our cruelty to animals statute contains several sections and in examining § 1109(1)(d) other sections of that statute should be looked to as interpretive aides. Hawaii Penal Code § 1109(1)(b)[6] provides that a person commits the offense of cruelty to animals if he knowingly or recklessly:

> (b) Keeps or uses; or in any way is connected with or interested in the management of, or receives money for the admission of any person to, any place kept or used for the purpose of fighting or baiting any bull, bear, dog, cock or other creature, and every person who encourages, aids or assists therein, or who permits or suffers any place to be so kept or used;

The Legislature has thus determined that managing or keeping a place at which cockfights are held is an act of cruelty to animals. Reading this section in conjunction with § 1109(1)(d), it is impossible to escape the conclusion that cockfighting itself is an act of cruelty to animals. It would indeed be absurd to hold that the Legislature did not find cockfighting an act of cruelty to animals but did find that keeping or managing a place at which cockfights are held was such an act of cruelty. We hold that the Legislature, by providing in § 1109(1)(b) that keeping or managing a place for cockfighting is an act of cruelty to animals, has evinced a clear intention to treat cockfighting as a type of cruelty to animals.

Our finding receives added strength by an examination of the history of our cruelty to animals statute. The precursor to our present statute was enacted in 1884 and contained the definitions of animal and cruelty as set out above. The sub-

---

[6] HRS § 711-1109(1)(b) (1976 Repl.).

stance of §§ 1109(1)(b) and (d) were also contained in that act.[7] Until 1972 when the Hawaii Penal Code was adopted, the original 1884 statute remained unchanged. The legislative history of the present penal code section reveals that in a draft of the Hawaii Penal Code, a single general provision on cruelty to animals had been proposed. A Joint Senate-House Interim Committee rejected the draft provision and recommended retaining the existing law on cruelty to animals with slight modifications. The Committee Report indicates that the committee felt that the single provision in the draft penal code was too vague to prevent some types of mistreatment of animals which were prohibited by existing law. Special Committee Report No. 6, *1972 Senate Journal* at 682. A later Conference Committee adopted the Interim Committee's recommendations stating that they "retain the substance of provisions in our present cruelty to animals statute with some modification updating the provisions." Conference Committee Report 72-2, *1972 Senate Journal* at 745. This final version was enacted by the Legislature.

Thus, Hawaii's cruelty to animals statute, as it now exists, is substantially the same as that enacted in 1884. The Legislature could have changed the statute at any time, but in 1972 did nothing more than update the language of the entire statute. As we noted above, included in the 1884 statute was a provision, very similar to what is now § 1109(1)(b), prohibiting keeping or managing a place used for cockfighting. We must assume that the 1972 Legislature was well aware of that

---

[7] Session Laws 1884, ch. 51, provided in part:

SECTION 2. Any person who shall keep or use, or in any way be connected with or interested in the management of, or shall receive money for, the admission of any person to any place kept or used for the purpose of fighting or baiting any bull, bear, dog, cock, or other creature, and every person who shall encourage, aid or assist therein, or who shall permit or suffer any place to be so kept or used, shall, upon conviction thereof, be adjudged guilty of a misdemeanor.

SECTION 5. Every person who shall wilfully set on foot, or instigate, or move to, or carry on, or promote, or engage in or do any act towards the furtherance of any act of cruelty to animals shall be guilty of a misdemeanor.

prohibition. Yet, the Legislature explicitly retained the substance of the existing law in order to *continue* the prohibition against all types of mistreatment of animals covered by the earlier statute.

Defendants claim, however, that "unjustifiable", as used in the statute's definition of cruelty, is too vague a standard.[8] They point to various local customs, such as using live akule to catch mahimahi or dogs to hunt wild boar, and suggest that reasonable persons could differ as to whether pain or suffering inflicted by such practices is justifiable. But defendants mistake the issue here. The issue is not whether hypothetical cases are covered by our cruelty to animals statute, but whether the conduct of *these* defendants is prohibited by the statute. Defendants have stipulated that they knowingly participated in cockfights. Since we have decided above that cockfighting is prohibited by § 1109(1)(d) of our cruelty to animals statute, it follows that these defendants have no standing to assert that the statute may be vague or indefinite as applied to other persons in situations not before the court. "One who would challenge the constitutional validity of a statute must show that as applied to him the statute is invalid . . . [W]hatever may be the position of others convicted under [an act] and not now before this court, the statute's terms clearly covered *this* case. There is no vagueness here on which *these* defendants can rely." (Citations omitted). *State v. Marley*, 54 Haw. 450, at 457, 509 P.2d 1095 (1973).

Courts have recognized limited exceptions to this general rule of standing where important First Amendment rights are being asserted or where individuals not parties to a suit stand to lose by its outcome and yet have no effective avenue of

---

[8] See *Brackett v. State*, 142 Ga. App. 601, 236 S.E.2d 689 (1977), in which the court found that cruelty to a gamecock was proscribed by a cruelty to animals statute which defined cruelty as an "act, omission or neglect [causing] unjustifiable physical pain, suffering, or death to any living animal." The issues decided in *Brackett* were whether the statute was meant to include fowls as animals and whether the evidence presented was sufficient to sustain convictions for cruelty to animals. But compare the Georgia statute's definition of "cruelty" with Hawaii Penal Code § 1100(6), *supra*.

preserving their rights themselves. *See Broadrick v. Oklahoma,* 413 U.S. 601, discussion at 611-612, (1973). Neither of these exceptions is applicable here.

## II. OVERBREADTH

Defendants' contention that the statute is overbroad must also fail. The doctrine of overbreadth, although closely related to a vagueness claim, is distinct in that while a statute may be clear and precise in its terms, it may sweep so broadly that constitutionally protected conduct as well as unprotected conduct is included in its proscriptions. *Grayned v. City of Rockford, supra; State v. Manzo, supra; State v. Marley, supra.*

In *State v. Shigematsu,* 52 Haw. 604, 483 P.2d 997 (1971), this court examined a statute which proscribed presence in a "barricaded place" where gambling implements were exhibited. We found that statute unconstitutional, reasoning, *inter alia,* that although the suppression of gambling was a legitimate state objective, it could not be pursued by unreasonably infringing upon fundamental personal rights such as freedom of association and movement protected by the Federal and State constitutions. We are not dealing with a statute of that type here for the obvious reason that our cruelty to animals statute does not purport to, nor does it, attempt to regulate conduct protected by either the Federal or State constitutions. Nowhere do defendants argue that there is a constitutionally protected right to cockfight nor has there been advanced a theory that cockfighting is a form of freedom of expression and arguably within the scope of the First Amendment. Since the conduct which the cruelty to animals statute seeks to regulate is amenable to reasonable regulation by the state and no constitutionally protected right is involved, it follows that the claim of overbreadth is without merit.

Finally, we would note that, as in the instance of a claim of vagueness, one who alleges that a statute is unconstitutionally overbroad must be directly affected by the claimed

overbroad aspects of the statute. A person to whom a statute may be constitutionally applied cannot challenge the statute on the ground that it may conceivably be applied unconstitutionally to others. *Broadrick v. Oklahoma, supra* at 610.

Reversed and remanded.

*Randolph Slaton (C. William Chikasuye* on the briefs), Deputy Prosecuting Attorneys, for plaintiff-appellant.

*Edwin Y. Sasaki* for defendants-appellees.