STATE OF HAWAII, Plaintiff-Appellant, *v.* MARY K. LEE, Defendant-Appellee

NO. 5493

STATE OF HAWAII, Plaintiff-Appellant, *v.* GLENN W. MILES, Defendant-Appellee

NO. 5494

JUNE 7, 1974

RICHARDSON, C.J., LEVINSON, KOBAYASHI, OGATA AND MENOR, JJ.

506

OPINION OF THE COURT BY OGATA, J.

On May 11, 1973, defendant-appellee Lee was arraigned in the District Court of the Third Circuit, South Hilo Division, for alleged violation of HRS § 291-12.[1] The information in this case charged defendant-appellee Lee as follows:

INFORMATION

On or about the 7th day of April, 1973, in Hilo, County and State of Hawaii, MARY K. LEE did operate a motor vehicle on the roadway leading to the Naniloa Hotel, a private property open to the general public, without exercising due care, to wit: by failing to keep a proper lookout and failing to maintain proper control of her vehicle,

---

[1] § 291-12. Inattention to driving. Whoever operates any vehicle without due care or in a manner so as to cause a collision with any person, vehicle or other property shall be fined not more than $500 or imprisoned not more than six months, or both.

thereby colliding into an oncoming vehicle, in violation of
Section 291-12, Hawaii Revised Statutes, as amended.
Defendant-appellee Lee entered a plea of no contest and the
court, *sua sponte,* took the matter under advisement.

Thereafter, on May 17, 1973, defendant-appellee Miles
was arraigned in the District Court of the Third Circuit, Puna
Division, for alleged violation of HRS § 291-1.[2] The informa-
tion in the second case charged defendant-appellee Miles as
follows:

INFORMATION

On or about the 8th day of April, 1973, in Kapoho,
County and State of Hawaii, on Railroad Avenue, a
privately-owned road, GLENN W. MILES did operate a
vehicle in a careless manner so as to endanger persons
and property by traveling 35 to 40 miles per hour on a
ten-foot wide unpaved road that had no shoulders,
thereby being unable to avoid colliding with a vehicle
approaching from the opposite direction, in violation of
Section 291-1, Hawaii Revised Statutes.

Defendant-appellee Miles also pleaded no contest to this
charge and the court, *sua sponte,* took the matter under
advisement.

Subsequently, on May 23, 1973, the district court judge
filed written opinions in both cases. The charges against both
defendants were dismissed, and both defendants were dis-
charged. Except for the description of some factual differ-
ences between the cases, and that the first case involved the
alleged violation of HRS § 291-12, and the second involved
the alleged violation of HRS § 291-1, the written decisions in
both cases were identical, and certainly the key legal ques-
tion involved in both cases was substantively similar. The
state has appealed to this court from both orders dismissing

---

[2] § 291-1. Careless or heedless operation of vehicle or riding of animals; penalty.
Whoever operates any vehicle or rides any animal carelessly or heedlessly of the
rights or safety of others, or in a manner so as to endanger or be likely to endanger any
person or property, shall be fined not more than $1,000 or imprisoned not more than
one year, or both.

these charges, under the provisions of HRS § 641-13(2) and Rule 43, District Court Rules of Penal Procedure, solely on a question of law. The Miles and the Lee cases have therefore been consolidated for purpose of disposition of these appeals.

The single and only issue presented to us by these appeals involves the proper interpretation of HRS §§ 291-1 and 291-12 as to whether these sections of the statutes should be deemed to apply to public property only. In each of these informations, neither defendant was charged with a chapter 291 offense on public property, *e.g.*, on the *public* streets or highways, and, hence, the decisions below held that neither incurred criminal liability under the pertinent provisions of HRS chapter 291 for the reason that these provisions do not extend to any conduct of any kind on private property. On the other hand, the state argues on these appeals that the statutes should be deemed to cover all land, including paths, roadways, driveways, and trails, and all other real property within the state of Hawaii, regardless of whether such property may be public, quasi-public, or utterly private in nature.

Since the appellees in these cases did not file any brief or memorandum and neither has appeared during the oral argument in defense of their positions, we have not had the benefit of any views expressed in opposition to the contentions made by the state. We have, however, taken time to research this problem and to resolve this issue. We hold that HRS §§ 291-1 and 291-12 should be deemed to apply not only to purely public property, such as public streets and highways and other public places, but also to all private property. On the basis of this holding, we reverse the orders dismissing the charges in both of these cases.

In 1971, the legislature, in conjunction with its consideration and passage of HRS ch. 291C,[3] the Statewide Traffic Code, also enacted HRS § 291-12, and a new section was added to our statutes pertaining to inattention to driving. No such statutory traffic regulation had been in effect in this state prior to the enactment of HRS § 291-12, although there was in force, immediately prior to that time, in each of the

---

[3] S.L.H. 1971, Act 150.

counties a provision in their traffic ordinances requiring that the operator of a motor vehicle shall exercise due care in the operation of such vehicle upon any street or highway in order to avoid collision with any person or property on or off such street or highway.[4]

HRS § 291-1, however, is not of recent origin. It has a long history and this section of our statutes can be traced as far back as 1850.[5] But even in 1850, during our horse and buggy era when vehicles were not power driven,[6] the language of this old statute did not spell out any particular place where a person could violate its terms. But interestingly, in another section of the same chapter of the Penal Code of 1850, relating to driving or leading any wild bull or other ferocious or dangerous animal, it was expressly required that before a person could violate this section that such driving or leading of any wild bull or other ferocious or dangerous animal must be within a street of any village or in a place of public resort.[7]

No change in the Penal Code of 1850, ch. 27, occurred until 1907, when the legislature amended sections 1 and 2 of the chapter to broaden the coverage of these sections to include specific kinds of vehicles consistent with the then available means of transportation, as carriages, wagons, bug-

---

[4] See sec. 15-24.17, Traffic Code of the City and County of Honolulu, being Ordinance No. 2553 (1964); sec. 11-1, County of Hawaii Ordinance No. 39 (1967); sec. 10-14.20, Maui Traffic Code, being Ordinance No. 413 (1965); sec. 7-106, Kauai Traffic Code, being Ordinance No. 134 (1968).

[5] Penal Code 1850, ch. 27, entitled furious and heedless riding, driving or conducting animals or vehicles, and frightening animals, contained 4 sections, and in section 1 it provided:
1. Whoever furiously or heedlessly of the safety of others, rides any horse or other animal, or drives or conducts any vehicle, and thereby imminently endangers the personal safety of any person, shall be punished by a fine not less than five dollars nor exceeding five hundred.

[6] The first automobile, a Wood Electric, was imported from Chicago to Hawaii in 1898, by the late C.J. Hedemann. The Sales Builder, May 1937, p. 5.

[7] Penal Code 1850, ch. 27, provided in section 3:
3. Whoever drives, leads, or otherwise conducts any wild bull, bullock, cattle or other ferocious or dangerous animal, in the street of any village, or in any place of public resort, shall, in case the personal safety of any person is thereby imminently endangered, be punished by fine not less than five dollars, nor exceeding five hundred, or in case the personal safety of any person is not so endangered, by a fine not less than five dollars, nor exceeding one hundred.

gies, omnibuses, carts, bicycles, automobiles, motorcycles and locomobiles.[8] In 1941, thirty-four years later, the legislature further amended this statute to read in its present form.[9] Throughout the years, since its original enactment in 1850, there has been no change in phraseology as to where a person must be when he operates a vehicle carelessly or heedlessly of the rights or safety of others or in a manner so as to endanger or be likely to endanger any person or property and thereby violate the terms of HRS § 291-1, and the legislature has not responded even after the question was raised in 1920 in *Territory v. Puana*, 25 Haw. 584 (1920).

Both HRS §§ 291-1 and 291-12 are included under Part I of HRS chapter 291, under the subject "Traffic Violations," and Part I is specifically designated under the sub-heading "Operation." Generally speaking, Part I of HRS chapter 291 is concerned with careless or heedless operation of vehicles or riding of animals; driving of vehicles while under the influence of intoxicating liquor or drugs; loading of freight on any motor car or truck, used for the transportation of passengers, in a manner so that any part of the freight projects beyond the extreme width of the motor car or truck; loading of any freight on the running board of a motor car or truck, used for the transportation of passengers, in a manner so that such freight projects beyond the running board, or blocks the doors of the vehicle; carrying of passengers under seven years of age on motorcycles and motor scooters; and inattention to driving.

Prior to the enactment of the Statewide Traffic Code contained in HRS chapter 291C, our hit-and-run statute was also a part of HRS chapter 291, Part I (§§ 291-2 and 291-3). However, because HRS chapter 291C adequately covered the hit-and-run subject under its Part II, the legislature in enacting this chapter in 1971, repealed the hit-and-run provisions as contained in HRS chapter 291, Part I (§§ 291-2 and 291-3.)[10] The phraseology of the hit-and-run provisions now

[8] S.L.H. 1907, Act 68 § 1.

[9] S.L.H. 1941, Act 116 § 1.

[10] S.L.H. 1971, Act 150.

appearing under Part II of HRS chapter 291C follows substantially and appears to be patterned after the hit-and-run provisions contained in the Uniform Vehicle Code[11] and the legislature in 1971, did not incorporate into HRS chapter 291C any part of the hit-and-run provisions as they existed in HRS §§ 291-2 and 291-3. Part II of HRS chapter 291C expressly states that it shall be applicable upon highways and elsewhere, and consequently the hit-and-run provisions would apply throughout the state, including areas deemed to be private property.

We do not perceive any significance as to legislative intent from the specific manner in which the present hit-and-run provisions were enacted by the legislature, and the repeal of the predecessor hit-and-run provisions contained in HRS §§ 291-2 and 291-3. If any legislative intent can be gleaned from such legislative activities concerning the scope of HRS §§ 291-1 and 291-12, it would be that these sections are applicable throughout the entire state, whether it be on public property or private property. The legislative committee reports[12] indicate that our legislature drafted HRS chapter 291C, the Statewide Traffic Code, by modeling it to the Uniform Vehicle Code with some modifications. In its deliberations as to the nature and scope of the legislation under consideration, the legislature deliberately omitted from HRS chapter 291C, the Statewide Traffic Code, the entire Article IX of the Uniform Vehicle Code, pertaining to reckless driving, driving while intoxicated and homicide by vehicle, which article was applicable not only to highways but elsewhere throughout the enacting state.[13] The reason for this legislative omission is

---

[11] Uniform Vehicle Code: Rules of the Road with Statutory Annotations, 1967, National Committee on Uniform Traffic Laws and Ordinances.

[12] Senate Standing Committee Report No. 685 (1971) and House Standing Committee Report No. 157 (1971).

[13] Uniform Vehicle Code § 11-101 reads as follows:
The provisions of this chapter relating to the operation of vehicles refer exclusively to the operation of vehicles upon the highways except:

     *     *     *     *     *

2. The provisions of article IX and chapter 10 shall apply upon highways and elsewhere throughout the state.

obvious, since there were already statutory regulations covering these subject matters in Part I of HRS chapter 291 and in the new penal code,[14] there was no necessity to duplicate these subjects in HRS chapter 291C.

When the provisions of both HRS §§ 291-1 and 291-12 are carefully analyzed, and in the light of the foregoing, it is very clear that each of these sections is not in any way limited in its applicability to conduct or act occurring upon any public street or highway. These provisions then operate throughout the state, whether it be on public property or on private premises.

Such a holding is consistent and accords with the weight of authority in other jurisdictions which have considered this same or similar problems.[15] If the legislature had intended to limit the applicability of HRS §§ 291-1 and 291-12 only to public streets and highways, it could and would have so expressly indicated in these statutes.[16] In fact in a section of HRS chapter 291C, the Statewide Traffic Code, the legislature provided that there shall be a duty upon every driver to use due care in the operation of a motor vehicle with respect to any pedestrian upon any roadway,[17] and in the same legislative act, it enacted HRS § 291-12. We think that the legislative classification given to inattention to driving in this manner is significant to show that the legislature meant to have this statute apply throughout the entire state.

---

[14] S.L.H. 1972, Act 9 § 1, chapter 7, part II Criminal Homicide.

[15] State v. Harold, 74 Ariz. 210, 246 P.2d 178 (1952). The following hit-and-run cases support the holding: State v Smith, 264 N.C. 575, 142 S.E.2d 149 (1965); State v. Gallagher, 102 N.H. 335, 156 A.2d 765 (1959); Meadows v. State, 211 Miss. 557, 52 So. 2d 289 (1951); Salazar v. State, 145 Tex. Cr. R. 478, 169 S.W.2d 169 (1943). The following drunk driving cases support the same holding: Farley v. State, 251 Miss. 497, 170 So. 2d 625 (1965); State v. Haight, 2 Conn. Cir. 79, 194 A.2d 718 (1963); Valentine v. County of Brunswick, 202 Va. 696, 119 S.E.2d 486 (1961); People v. Taylor, 202 Misc. 265, 111 N.Y.S.2d 703 (Magis. Ct. N.Y. 1952); State v. Weston, 202 S.W.2d 50 (Mo. 1947); O'Reilly v. State, 235 Ala. 328, 179 So. 263 (1938); State Dowling, 204 Ia. 977, 216 N.W. 271 (1927); Annotation, Drunken Driving — On Private Property: 29 ALR3d 938. See also, 7 Am. Jur. 2d, Automobiles and Highway Traffic § 169.

[16] Note the language used by the several ordinances cited in footnote 4.

[17] HRS § 291C-74.

 

We do not see any ambiguity which would require us to rely upon any principle of statutory construction such as that mentioned by the district court judge that these sections being penal in nature must be strictly construed against the government. We hold that HRS §§ 291-1 and 291-12 are clear, unambiguous and mean what each of these sections says, and that enactment of these sections is reasonably related to the preservation of public health, safety, morals or general welfare of the public and is well within the legitimate exercise of the police power of the state.[18]

Orders dismissing these charges are reversed and set aside and these cases are remanded for further proceedings consistent herewith.

*Robert T. Ito*, First Deputy Prosecuting Attorney, County of Hawaii, for plaintiff-appellant.

---

[18] "Even upon private property an intoxicated or reckless driver of an automobile is just as much a menace to himself or to anyone who may be lawfully thereon as he would be to those on a public highway. The only difference is in the degree." State *v.* Harold, 74 Ariz. 210, 215, 246 P.2d 178, 181 (1952).