Opinion
CANTER, J.
The City of Santa Barbara (City) appeals from an order of the Municipal Court of Santa Barbara County, South Coast Judicial District (Municipal Court) sustaining a demurrer to prosecutions brought pursuant to section 15.16.085 of the Santa Barbara Municipal Code, the City’s sleeping ordinance, and holding that section unconstitutional.
Facts
A rather large number of cases were consolidated in the Municipál Court for hearing on a common demurrer. Some 55 individuals were given 84 citations for violations of either the City’s camping ordinance (§ 15.16.070 of the municipal code)[1] which prohibits camping in certain areas, or of the City’s sleeping ordinance (§ 15.16.085 of the municipal code) which prohibits sleeping in certain areas and at certain times. After the hearing on the demurrer, the Municipal Court issued a written decision and order. The camping ordinance was upheld, and apparently those prosecutions have proceeded to finality, no appeal having been taken from that order. The sleeping ordinance, however, was declared unconstitutional. This decision affected 38 of the citations. The City appeals. We reverse.
Contentions
The City contends the Municipal Court departed from established constitutional principles in finding the ordinance overbroad in a case where there *Supp. 13 was no assertion of engagement in constitutionally protected activity; in using hypothetical applications of the ordinance where no impairment of First Amendment or fundamental rights was alleged; and, in considering only one possible purpose of the ordinance in determining whether it satisfies the rational relationship.
Discussion
The sleeping ordinance, section 15.16.085 of the Santa Barbara Municipal Code, provides as follows: “It shall be unlawful for any person to sleep in: H] (1) Any public park during the period of time from 10:00 P.M. to 6:00 A.M.; [1] (2) Any public street; [|] (3) Any public parking lot or public area, improved or unimproved; or [1] (4) Any public beach during the period of time from 10:00 P.M. to 6:00 A.M.”
In finding the ordinance unconstitutional, the Municipal Court relied upon two Florida cases, City of Pompano Beach v. Capalbo (Fla.App. 1984) 455 So.2d 468, and State v. Penley (Fla.App. 1973) 276 So.2d 180. While the ordinances struck down by the Florida courts bear similarities to the Santa Barbara ordinance, there is ample and compelling California authority to uphold its validity.
In Batts v. Superior Court (1972) 23 Cal.App.3d 435 [100 Cal.Rptr. 181], a Newport Beach police officer observed a van parked in a public parking lot. Suspecting the occupants of violating a city ordinance prohibiting sleeping in an automobile parked in any place in the City or sleeping on the beach between the hours of 9 p.m. and 9 a.m., the officer made contact with the occupants and discovered contraband leading to a felony arrest. The court did not question the validity of the ordinance in upholding the officer’s actions. On the contrary, it held: “One of the tools the city uses in maintaining some semblance of control is the ordinance which provides that no one may sleep in an automobile or on the beach between the hours of 9:00 p.m. and 9:00 a.m. . . . [H]e had reason to believe that even if the occupants were not asleep at that time, they did intend to remain in the parking lot and sleep. Accordingly, he had the duty of notifying the occupants that an ordinance prohibited their doing so.” (Id., at p. 439.) The outcome of this case is contrary to the Florida case, State v. Penley, supra, 276 So.2d 180, relied upon by the Municipal Court. There the officer discovered a concealed pistol after arresting Penley for sleeping on a bus-stop bench. The Florida court found the sleeping ordinance unconstitutionally vague and the arrest pursuant thereto unlawful.
*Supp. 14 Ferrell v. City of Santa Monica (1972) 26 Cal.App.3d 374 [102 Cal.Rptr. 705] involved a civil suit for injuries suffered when plaintiff was run over by a beach-cleaning machine while he was sleeping on the beach in violation of a Santa Monica city ordinance. A jury awarded plaintiff damages. The city’s motion for judgment notwithstanding the verdict was denied by the trial court. The Court of Appeal reversed holding that plaintiff’s violation of the city ordinance prohibiting loitering or sleeping on the beach between midnight and 5 a.m. established plaintiff’s contributory negligence as a matter of law. The validity of the ordinance was not questioned.
Where the constitutionality of an analogous ordinance has been called into question, its validity was upheld. The court in People v. Trantham (1984) 161 Cal.App.3d Supp. 1, 6 [208 Cal.Rptr. 535], held that a Los Angeles ordinance providing that, “No person shall enter, remain, stay or loiter in any park between the hours of 10:30 o’clock p.m. and 5:00 o’clock a.m.” was not unconstitutionally vague or overbroad. The analysis set forth therein is persuasive: “[Generally speaking, late night park closure regulations pass constitutional muster as valid exercises of municipal power to restrict the use of a municipality’s public facilities regarding reasonable time, place, and manner limitations, [f] . . . Specifically, we find that its proscription against anyone entering, remaining, staying, or loitering in any park during the late night hours in question is not void for vagueness or overbreadth. No overbreadth problem arises since the regulation does not possibly encompass innocent as well as criminal conduct inasmuch as its proscription against anyone going into or being in a park for any length of time during the specified time period applies across the board, which means that it is of no legal consequence if a person enters or is in the park for an innocent or criminal purpose. [Citation.] Moreover, no vagueness problem arises for the reasons that the regulation places a person on notice as to precisely what conduct is proscribed and the proscription itself leaves no room for the exercise of discretion by law enforcement officers as to the propriety of any particular person’s presence in the park.” (Id., at p. Supp. 17.)
The Municipal Court found the ordinance constitutionally defective as overbroad. But, as the city attorney correctly points out, the doctrine of “overbreadth” of a statute is inapplicable to cases not involving First Amendment rights. There is a “general rule that constitutional adjudication requires a review of the application of a statute to the conduct of the party before the Court, [f] Subsequently, however, the Court did recognize an exception to this general rule for laws that are written so broadly that they may inhibit the constitutionally protected speech of third parties.” (City Council v. Taxpayers for Vincent (1984) 466 U.S. 789, 798 [80 L.Ed.2d 772, 782, 104 S.Ct. 2118, 2125].)
*Supp. 15 While under some circumstances, sleeping “may be expressive and part of the message delivered by the demonstration,” Clark v. Community for Creative Non-Violence (1984) 468 U.S. 288, 294 [82 L.Ed.2d 221, 227, 104 S.Ct. 3065, 3069], it nonetheless is subjectable to time, place and manner restrictions. (Id., at p. 294 [82 L.Ed.2d at p. 228].) There is no implication in the present case that the defendants were engaged in any demonstration to which sleeping could possibly be appended as expressive conduct. Rather it is clear that the sleeping to which this ordinance was directed was of the general kind, which enjoys no peculiar constitutional advantage. As the Clark case points out, the government can constitutionally prohibit overnight sleeping in public areas as part of its broad police powers.
“In a facial challenge to the overbreadth and vagueness of a law, a court’s first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail. The court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications. ... A court should therefore examine the complainant’s conduct before analyzing other hypothetical applications of the law.” (Hoffman Estates v. Flipside, Hoffman Estates (1982) 455 U.S. 489, 494-495, [71 L.Ed.2d 362, 369, 102 S.Ct. 1186, 1191] (italics added and fns. omitted.) As in Hoffman Estates, the court “in this case did not explicitly consider whether the ordinance reaches constitutionally protected conduct and is overbroad.” (Ibid.)
Indeed, as in Hoffman Estates, supra, the court did not explicitly consider “whether the ordinance is vague in all of its applications. Instead the court determined that the ordinance is void for vagueness because it is unclear in some of its applications to the conduct of [defendant] and of other hypothetical parties.” (455 U.S. at p. 495 [71 L.Ed.2d at p. 369, 102 S.Ct. at pp. 1119-1192].) The hypothetical applications engaged in by the Municipal Court, garnered from the Florida case of City of Pompano Beach, supra, 455 So.2d 468, do not meet the required scrutiny demanded of the situation by United States constitutional standards.
United States v. Hogue (9th Cir. 1985) 752 F.2d 1503, involved in actuality one of the hypotheticals criticized by the Florida court in City of Pompano Beach, supra, 455 So.2d at page 470, and adopted by the Municipal Court: the “inebriated driver who has taken widely disseminated good counsel and chosen to go to sleep in his parked car rather than take his life or others’ lives in his hands.” Ms. Hogue was cited for sleeping off the effects of alcohol in a national park, in violation of a park regulation. The Ninth Circuit Court of Appeals noted that “[w]here speech is not the explicit *Supp. 16 subject of a statute or regulation and is not otherwise implicated ... we need only examine the vagueness challenge under the facts of the particular case.” (Hogue, at p. 1504.) With regard to the driver’s dilemma which caused the Florida court in City of Pompano Beach, supra, to find vagueness, the Ninth Circuit held: “The law does not exonerate one who forces an election between evils and chooses the lesser of the two.” (Hogue, at p. 1505.) In such a situation, there is nothing vague about the officer’s duty nor does the potentiality for dilemma detract from the fairness of the notice afforded the defendant. The same considerations when applied to the Santa Barbara ordinance yield the same result. While the Municipal Court felt the potentiality for such a dilemma rendered the ordinance unconstitutionally vague, the parked inebriated driver would be prosecutable under the City’s ordinance. The Santa Barbara police officer is not required to subjectively determine any factors about the violator’s status nor is the officer vested with complete discretion after encountering a violator. The sleeping ordinance is clear of discernment to both enforcer and violator, and is consequently not void for vagueness.
The preamble section of the ordinance which enacted section 15.16.085 to the city code enunciated the purpose of the ordinance as being the protection of the community from an increase in criminal behavior caused by the transient population. While noting that control of crime is a proper object for the exercise of the City’s police powers, the Municipal Court found that the ordinance did not bear a reasonable relationship to the crime control objective because criminals do not commit crimes in their sleep. The Municipal Court could not find a nexus between the inactivity resulting from sleeping and criminality. This rather narrow view of the ordinance ignores many other legitimate purposes served by the ordinance. Among those legitimate purposes which do connect the purpose of the ordinance to the prohibited activity is the interest the City has in protecting the sleeping transient as victim rather than as culprit. This purpose is recognized as a legitimate exercise of police power in the inebriated motorist case, United States v. Hogue: “Hogue, her abilities substantially impaired from alcohol, was alone in a national park at night . . . asleep in a vehicle with an open window, not within a designated campground or shelter. That conduct constitute[d] the violation punishable under the regulation. In her vulnerable condition, Hogue could neither defend herself against humans or animals, . . . The law acts reasonably in prohibiting the creation of such a risk in the confines of a national park.” (Hogue, supra, 752 F.2d at p. 1505.) Likewise, the City acts reasonably in lessening the risks to transients from other transients by restricting the areas where overnight sleeping, and thus vulnerability, can legitimately take place. Among others, this purpose formed a reasonable relation to the proscribed activity. Additional valid purposes need not be catalogued here.
*Supp. 17 The order appealed from is reversed and the case is remanded to the Municipal Court with directions to overrule the demurrer.
Adams, P. J., and Stevens, J.,* concurred.
The United States Supreme Court denied a petition for writ of certiorari on April 28, 1986.

 Section 15.16.070 provides as follows: “It shall be unlawful for any person to camp in the following areas except as otherwise provided for: (1) Any public park; (2) Any public street; (3) Any public parking lot or public area, improved, or unimproved; (4) Any public beach between a point representing the prolongation of the easterly city limits as they existed prior to May 31, 1957, and a point representing the prolongation of La Marina Drive.”

Assigned by the Chairperson of the Judicial Council.