921 P.2d 1170

**STATE of Hawai'i, Plaintiff–Appellee,**

**v.**

**Jimmy W. STURCH, Defendant– Appellant.**

**No. 16778.**

Intermediate Court of Appeals of Hawai'i.

June 25, 1996.

As Amended June 27, 1996.

Certiorari Denied July 8, 1996.

---

Jimmy W. Sturch, on the briefs, Kaneohe, pro se.

Alexa D.M. Fujise, Deputy Prosecuting Attorney, City and County of Honolulu, on the brief, Honolulu, for plaintiff-appellee.

Before BURNS, C.J., and WATANABE and ACOBA, JJ.

ACOBA, Judge.

Defendant–Appellant Jimmy W. Sturch (Defendant) was found guilty by the district court of four charges of violating Hawai'i Revised Statutes (HRS) § 291C–112 (1993) which prohibits inhabiting a parked vehicle between the hours of 6:00 p.m. and 6:00 a.m. The court imposed a $25 fine for each conviction, but suspended the fines imposed on the last three charges on the condition that Defendant not receive similar citations for a period of one month. We affirm.

## I.

HRS § 291C–112 states as follows:

**§ 291C–112 Certain uses of parked vehicles prohibited between 6:00 p.m. and 6:00 a.m.; definition; exceptions.** (a) *No person shall use any vehicle for purposes of human habitation,* whether or not the vehicle is designed or equipped for that purpose, *while the vehicle is parked on* any roadway, street, or highway or other *public property between the hours of 6:00 p.m. and 6:00 a.m.* or while the vehicle is parked on private property without authorization of the owner or occupant authorizing both the parking of the vehicle there and its use for purposes of human habitation.

(b) As used in this section, *"purposes of human habitation" includes use as a dwelling place, living abode, or sleeping place.*

(c) This section does not apply to the parking of vehicles and their use for pur-

poses of human habitation in parks, camps, and other recreational areas in compliance with law and applicable rules and regulations, or under emergency conditions in the interest of vehicular safety.

(d) The department of health shall promulgate rules and regulations, pursuant to chapter 91, necessary for the administration of this section.[1]

(Emphases and footnote added.)

The offenses for which Defendant was charged took place in 1992 on September 21 at 1:18 a.m., on October 27 at 11:40 p.m., on October 28 at 3:20 a.m., and on November 28 at 11:05 p.m., all at the Ala Wai Boat Harbor parking area in Honolulu on the island of Oʻahu. On each occasion, police officers found Defendant sleeping on a cot in a parked van.

At trial, Defendant testified that he was a writer and a photographer. He maintained that his van was "a mobile photography studio" and that its "primary purpose" was "not for human habitation." He explained that he obtained his "inspiration moving around from one place to another" and that he took "a lot of night photographs."

At trial, the State of Hawaiʻi (the State) failed to specify which of the three defined types of habitation under HRS § 291C–112(b) was charged. However, when asked for the reason why Defendant was "ticket[ed]" for the offenses on September 21 and October 28, Officer Vincent Domingcil (Officer Domingcil) stated that Defendant "was sleeping in this vehicle ... [a]nd it was between the hours of 6 p.m. to 6 a.m." At the time that the officer observed Defendant sleeping on a "folded cot" on September 21, 1992, Defendant told him, "I have no home. This van is my home." Officer Domingcil also recalled seeing clothing, food, "toiletries and other items" in the van. As to the

September 21 and October 28, 1992 offenses, the trial court found that "it was clear from the evidence that [Defendant was] sleeping" and was "for the purposes of this statute occupying the vehicle at least on these two occasions for the purpose of human habitation."

As to the October 27 and November 28, 1992 offenses, Officer Charles Lee (Officer Lee) testified that he noticed Defendant's van parked in the same location every night with the "back doors" and the "passenger door on the front of the van" open, and had observed Defendant asleep on a cot in his van. When Officer Lee asked Defendant whether Defendant knew it was "against the law to sleep in a vehicle, ... on a public facility[,]" Defendant replied that he was aware of the statute. While Defendant did not admit that he was "living" in the vehicle, Officer Lee believed Defendant was doing so because "in [Defendant's] vehicle there [were] boxes which contained food, clothing, and [Defendant] also had some toiletry [sic], and ... a hot plate." Defendant confirmed Officer Lee's observations, stating "the officer was pretty much right about everything that he said, except that I don't have a hot plate." With respect to the offenses on October 27 and November 28, 1992, the court found that "[t]he fact that [Defendant] was sleeping in his vehicle, plus certain other evidence of habitation, indicates that the defendant was certainly within the scope of using the vehicle for human habitation under the requirements of [HRS § ] 291[C]–112."

On appeal, Defendant, who appears *pro se*, does not contest the sufficiency of the evidence but apparently argues that HRS § 291C–112 improperly (1) deprives him of the "right to use ... [a] privately owned vehicle in a manner that [he] may choose," [2] (2) restricts his business by preventing the use of his vehicle during certain hours,[3] and

1. We are not aware of any rules promulgated by the department of health under Hawaiʻi Revised Statutes (HRS) § 291C–112(d) (1993).

2. Defendant claims that "[HRS § ] 291c–112 takes away from the ... people, the right to use their own personal property, their privatly [sic] owned vehicle, in a manner that they may choose[.]"

3. Defendant asserts that,

[HRS § ]291C–112 of the Statewide Traffic Code does discriminate against a business such as my own by not making a special provision for the business person that has a genuine need to sleep in their work vehicle for professional reasons. There are frequently times that while awaiting ... for a dramatic or other type photo effect, that it may be necessary to

(3) discriminates against him because it allows "habitation purposes and sleeping" to others "between the hours of 6:00 a.m. and 6:00 p.m." [4]

We construe Defendant's points as raising constitutional challenges to HRS § 291C–112. Thus, we examine the history and the language of HRS § 291C–112 in light of established constitutional doctrines. Because the facts of this case do not involve a vehicle parked on "private property," we limit our discussion to vehicles parked on public property.

## II.

### A.

■ Defendant first argues that HRS § 291C–112 improperly deprives him of the right to use his privately owned vehicle in the manner he chooses. Contrary to Defendant's contention, however, a state may, as part of the exercise of its police power, "'rightfully prescribe uniform regulations [for the use of vehicles] necessary for public safety and order[.]'" *State v. French*, 77 Hawai'i 222, 231, 883 P.2d 644, 653 (App. 1994) (quoting *Hendrick v. Maryland*, 235 U.S. 610, 622, 35 S.Ct. 140, 142, 59 L.Ed. 385 (1915)). In *French*, we rejected the defendant's claim that he was exempt from statutes requiring no-fault insurance, use of seat belts, a certificate of inspection, and a driver's license, because he utilized his vehicle for "personal needs" and the statutes applied only to businesses and state vehicles. *Id.* at 230, 883 P.2d at 653. Consequently, as we held in *French*, Defendant's right to use his vehicle as he chooses is still "subject to the State's police power to regulate an individual's conduct for the protection of society." *Id.* at 231, 883 P.2d at 653 (citing *State v.*

*Shigematsu*, 52 Haw. 604, 610–11, 483 P.2d 997, 1001 (1971)).

The police power of the State is broad and extends to the "preservation of public health, safety, morals or [the] general welfare of the public[.]" *State v. Lee*, 55 Haw. 505, 513, 523 P.2d 315, 319 (1974). *See also State v. Lee*, 51 Haw. 516, 465 P.2d 573 (1970); *State v. Diamond Motors, Inc.*, 50 Haw. 33, 429 P.2d 825 (1967). As long as a statute is related to these objectives, it falls within the scope of the State's police power. The legislative findings in support of HRS § 291C–112 indicate that "the use of motor vehicles as a domicile or residence constitutes a hazard to the public health and welfare." 1972 Haw. Sess.L.Act 48, § 1 at 231. The legislature thus sought "to protect the public health and welfare by prohibiting the use of any motor vehicle for purposes of human habitation...." *Id.* Assuming then, that the statute's prohibition against the use of motor vehicles as residences is designed to protect the "public health and welfare[,]" *id.*, HRS § 291C–112 would ostensibly fall within the scope of the State's police power. As set forth in Part III.A., *infra*, we conclude that the conduct on public property regulated by HRS § 291C–112 does affect the public health and welfare and is therefore a proper subject for the exercise of the police power. We proceed at this point to examine whether there are any constitutional limitations on this exercise of the police power.

### B.

■ Cases which have struck down laws prohibiting sleeping in a vehicle parked in a public place have rested on the premise that such laws are overbroad because they would punish innocent, constitutionally protected behavior as well as conduct which may be validly regulated. *See City of Pompano*

spend days in the same vicinity or location.... It certainly isn't feasable [sic] to be checking into the local hotel or going to an apartment or the like between the hours of 6 pm and 6 am....

4. According to Defendant,
[HRS § ]291C–112 of the Statewide Traffic Code discriminates ... when it specifies "between [ ] the hours of 6 pm and 6 am[,]" making it unlawful to use a vehicle for habi-

tation or sleeping between such hours. The majority of our people are struggling for survival during the hours between 6 am and 6 pm, when those that remain awake during the evening hours between 6 pm and 6 am ... are actually rewarded by being able to use their vehicles for habitation purposes and sleeping[.] ... They can do this between the hours of 6 am and 6 pm, regardless of the location or their profession[.]

*Beach v. Capalbo,* 455 So.2d 468, 471 (Fla. Dist.Ct.App.1984), *review denied,* 461 So.2d 113, *and cert. denied,* 474 U.S. 824, 106 S.Ct. 80, 88 L.Ed.2d 65 (1985); *State v. Penley,* 276 So.2d 180 (Fla.Dist.Ct.App.), *cert. denied,* 281 So.2d 504 (Fla.1973). Such analysis, however, may run afoul of the proposition that the overbreadth doctrine is generally limited to a law's effect on the First Amendment rights of those not present before the court. *Village of Hoffman Estates v. Flipside, Hoffman Estates,* 455 U.S. 489, 508, 102 S.Ct. 1186, 1198, 71 L.Ed.2d 362 (1982) (White, J., concurring). *See Whiting v. Town of Westerly,* 942 F.2d 18, 21 (1st Cir. 1991); *Hershey v. City of Clearwater,* 834 F.2d 937, 940 n. 5 (11th Cir.1987); *Pottinger v. City of Miami,* 810 F.Supp. 1551, 1577 (S.D.Fla.1992); *People v. Davenport,* 176 Cal. App.3d Supp. 10, 222 Cal.Rptr. 736, 739 (1985), *cert. denied,* 475 U.S. 1141, 106 S.Ct. 1794, 90 L.Ed.2d 339 (1986).

■ Our supreme court has held that "[o]ne who alleges that a statute is unconstitutionally overbroad, other than a statute affecting the freedom of expression, must be directly affected by the claimed overbroad aspects." *State v. Tripp,* 71 Haw. 479, 483, 795 P.2d 280, 282 (1990) (citing *State v. Kaneakua,* 61 Haw. 136, 143–44, 597 P.2d 590, 594 (1979)). "A person to whom a statute may be constitutionally applied cannot challenge the statute on the ground that it may conceivably be applied unconstitutionally to others." *Kaneakua,* 61 Haw. at 144, 597 P.2d at 594 (citing *Broadrick v. Oklahoma,* 413 U.S. 601, 610, 93 S.Ct. 2908, 2914–15, 37 L.Ed.2d 830 (1973)).

■ Defendant did not claim that the statute infringed upon his constitutional right to freedom of expression. Sufficient evidence was presented at trial to establish that Defendant, by "living" in his vehicle, came within the direct prohibition against habitation in HRS § 291C–112. *See Tripp, supra,* and discussion *infra.* Moreover, under the evidence presented, Defendant would not fall within the hypothetical and potentially unconstitutional applications of the statute to a "tired [person] asleep—in his [or her] carseat ... [or] while the car is parked, ... the alternate long-distance driver asleep in ... a

... parked tractor-trailer, [or] the tired or inebriated driver who has taken widely disseminated good counsel and chosen to go to sleep in his [or her] parked car...." *City of Pompano Beach,* 455 So.2d at 470. *See also Davenport,* 222 Cal.Rptr. at 738.

Hence, because Defendant is a person to whom HRS § 291C–112 directly applies, and his expressive conduct is not at issue, Defendant does not have standing to assert an overbreadth challenge based on hypothetical applications of the statute. *See Kaneakua, supra.* Consequently, we hold that Defendant does not have standing to challenge HRS § 291C–112 as overbroad.

## C.

■ Other courts have held statutes similar to HRS § 291C–112 to be unconstitutionally vague. *See Horn v. City of Montgomery,* 619 So.2d 949 (Ala.Crim.App.1993) (holding portion of ordinance prohibiting people from sleeping "in or on a motor vehicle" was void for vagueness); *City of Pompano Beach,* 455 So.2d at 468, 469 (striking ordinance which declared that it was "unlawful for any person to lodge or sleep in, on, or about any automobile" on public property as "both unconstitutionally vague and overbroad"). We do not believe that to be the case here. Constitutional challenges of penal statutes on vagueness grounds are subject to the following standard:

Due process of law requires that a penal statute state with reasonable clarity the act it proscribes and provide fixed standards for adjudging guilt, or the statute is void for vagueness. *State v. Kameenui,* 69 Haw. 620, 621, 753 P.2d 1250, 1251 (1988). Statutes must give the person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited so that he or she may choose between lawful and unlawful conduct. *Id.*

*State v. Gaylord,* 78 Hawai'i 127, 138, 890 P.2d 1167, 1178 (1995) (quoting *State v. Tripp,* 71 Haw. 479, 482, 795 P.2d 280, 282 (1990)).

HRS § 291C–112 prohibits the use of a vehicle "for purposes of human habitation[.]" HRS § 291C–112(a). The phrase, "purposes

of human habitation" is defined as including "use [of a vehicle] as a dwelling place, living abode, or sleeping place." HRS § 291C–112(b). These definitions comport with the dictionary definition of "habitation." "Habitation" is defined in part as follows: "the act of inhabiting[,] occupancy[,] ... a dwelling place[,] residence[.]" *Merriam Webster's Collegiate Dictionary* 521 (10th ed. 1993). "Inhabit" means, in part, "to occupy as a place of *settled* residence or habitat[.]" *Id.* at 601 (emphasis added).

■ The terms "dwelling place" and "living abode" clearly denote habitation. The term "sleeping place," taken alone, may arguably connote occupancy of a vehicle which might not amount to habitation. Read in the context of the statute, however, the phrase "sleeping place" is obviously modified by the preceding reference to "purposes of human habitation." Thus, "sleeping place" as used in the definition is a place inhabited for sleeping purposes. Accordingly, HRS § 291C–112 plainly targets only activities associated with habitation. Qualified by the preceding phrase "purposes of human habitation," then, the term "sleeping place" is sufficiently definite to be understood by a person of ordinary intelligence.[5] *See State v. Ewing*, 81 Hawai‘i, 156, 163, 914 P.2d 549, 556 (App.1996) (holding terms used in ordinance were susceptible to ordinary understanding and thus not void for vagueness); *see also State v. Crouser*, 81 Hawai‘i 5, 911 P.2d 725 (1996); *State v. Taylor*, 49 Haw. 624, 425 P.2d 1014 (1967).

■ Moreover, before a law may be held to be "unduly vague, in violation of due process," it must be "demonstrate[d] that the law is impermissibly vague in all its applications." *Hoffman Estates*, 455 U.S. at 497,

102 S.Ct. at 1193. Accordingly, a "plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Id.* at 495, 102 S.Ct. at 1191. There is sufficient evidence that Defendant was using his van as a "home" and therefore would not be entitled to mount a challenge to any purported vagueness in the law as it might apply to him.

### D.

■ Finally, we are faced with the question of whether HRS § 291C–112 infringes on any specific constitutional right. There is no authority supporting a specific constitutional right to sleep in a public place, *Pottinger*, 810 F.Supp. at 1575, especially where "the sleeping ... [is] of the general kind[.]" *Davenport*, 222 Cal.Rptr. at 738. But there may be some constitutional protection extended to "overnight sleeping ... [where it] is expressive conduct protected to some extent by the First Amendment[,]" *Clark v. Community for Creative Non–Violence*, 468 U.S. 288, 293, 104 S.Ct. 3065, 3068–69, 82 L.Ed.2d 221 (1984),[6] or where it may be protected by other specific fundamental rights. *Pottinger*, 810 F.Supp. at 1579. *Cf. State v. Shigematsu*, 52 Haw. 604, 607, 483 P.2d 997 999 (1971) (recognizing that the State may restrict acts of individuals in the exercise of its police power unless the restrictions unreasonably infringe upon fundamental personal rights). Aside from Defendant's apparent claim of a "right to work," however, this case does not raise such issues.

Defendant's second claim is that the statute discriminates against his business because he is a "business person that has a

5. "Under the doctrine of *noscitur a sociis,* the meaning of words or phrases in a statute may be determined by reference to the meaning of words or phrases associated with it." *State v. Crouser,* 81 Hawai‘i 5, 13 n. 6, 911 P.2d 725, 733 n. 6 (1996). *See State v. Aluli,* 78 Hawai‘i 317, 893 P.2d 168 (1995); *State v. Deleon,* 72 Haw. 241, 813 P.2d 1382 (1991); *State v. Taylor,* 49 Haw. 624, 425 P.2d 1014 (1967). This rule of construction may also be applicable. Applying the doctrine of *noscitur a sociis,* the term "sleeping place" is associated with the terms "dwelling place" and "living abode" and thus, connotes the

use of a vehicle as a sleeping place for the purpose of human habitation.

6. In *Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 293, 104 S.Ct. 3065, 3068–69, 82 L.Ed.2d 221 (1984), the United States Supreme Court indicated that while there may be some constitutional protection extended to "overnight sleeping [in a public park] in connection with [a] demonstration" on the plight of the homeless, such "[e]xpression, whether oral or written or symbolized by conduct, is subject to reasonable time, place, or manner restrictions."

genuine need to sleep in [his] work vehicle for professional reasons[.]" Defendant explained that he purchased the van with the intent to use it as a "mobile photography studio," that the vehicle was "not primarily to live in," and that he took a "lot of night photographs." We construe this claim as a due process challenge grounded in a claim that there exists a "fundamental right to work."

 Hawai'i does not recognize a "fundamental right to work." *Nagle v. Board of Educ.*, 63 Haw. 389, 629 P.2d 109 (1981); *accord Daoang v. Department of Educ.*, 63 Haw. 501, 630 P.2d 629 (1981). While it is true that a statute must withstand the strict scrutiny where a fundamental right is involved, *San Antonio [Independent] School District v. Rodriguez*, [411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973)]; *Shapiro v. Thompson*, [394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969)], this court has already held that the right to work is not fundamental and that, therefore, only the rational basis test applies. *Maeda v. Amemiya*, 60 Haw. 662, 594 P.2d 136 (1979).

*Nagle*, 63 Haw. at 399, 629 P.2d at 116; *accord Daoang*, 63 Haw. at 504, 630 P.2d at 631.

Because no fundamental right to work exists, Defendant's claim only implicates an economic interest. "Where economic interests are concerned, the rational basis test is the proper standard.... The test of constitutionality is whether [the] statute has a rational relation to a legitimate state interest." *Maeda v. Amemiya*, 60 Haw. 662, 669, 594 P.2d 136, 141 (1979) (citations omitted). We apply this test in Part III, *infra*, in conjunction with our analysis of Defendant's claim that he was unconstitutionally denied

equal protection of the laws. We conclude that HRS § 291C–112 does have a rational relationship to legitimate state interests in regulating the use of public property to protect public health and welfare, *see* discussion *infra*, and therefore the statute does not unconstitutionally discriminate against Defendant's business.

### III.

Lastly, Defendant argues that by prohibiting sleeping in vehicles from "6:00 p.m. [to] 6:00 a.m.," HRS § 291C–112 discriminates against persons who work during the day and sleep during the night and in favor of persons who sleep during the day and work at night. He therefore raises an equal protection claim.[7]

For purposes of equal protection analysis, we note at the outset that the statute in question does not discriminate on the basis of suspect categories and Defendant does not belong to any suspect class.[8] Under the circumstances here, the statute does not impinge upon any fundamental constitutional rights. As we observed *supra*, Hawai'i does not recognize a fundamental right to work. Generally, a fundamental right to sleep in a public place is not recognized. Because "suspect classifications or fundamental rights are not at issue," Defendant's claim that he was denied equal protection of the laws is subject to the "rational basis test." *Baehr v. Lewin*, 74 Haw. 530, 571–72, 852 P.2d 44, 64, *reconsideration granted and clarification granted in part*, 74 Haw. 650, 875 P.2d 225 (1993) (brackets, internal quotation marks, and citation omitted). Under the rational basis test, our inquiry is limited to whether the statute "rationally furthers a legitimate state inter-

---

7. Article I, section 5 of the Hawai'i Constitution provides:

No person shall be deprived of life, liberty or property without due process of law, nor be denied the equal protection of the laws, nor be denied the enjoyment of the person's civil rights or be discriminated against in the exercise thereof because of race, religion, sex or ancestry.

Haw. Const. Art. I, § 5.

8. The Hawai'i Supreme Court has stated that:

[a] suspect classification exists where the class of individuals formed has been "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." *Nachtwey v. Doi*, 59 Haw. 430, 434 n. 5, 583 P.2d 955, 958 n. 5 (1978) (quoting *San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1, 28, 93 S.Ct. 1278, 1294, 36 L.Ed.2d 16 (1973)).

est." *Id.* at 572, 852 P.2d at 74 (citation omitted).

### A.

■ We are bound to read the language of HRS § 291C–112 "in the context of the entire statute and construe it in a manner consistent with its purpose." *Bumanglag v. Oahu Sugar Co.,* 78 Hawai'i 275, 280, 892 P.2d 468, 473 (1995). "[I]n determining the purpose of the statute, we may [also] look to relevant legislative history." *State v. Wells,* 78 Hawai'i 373, 376, 894 P.2d 70, 73, *reconsideration denied,* 78 Hawai'i 474, 896 P.2d 930 (1995) (internal quotation marks, brackets, and ellipsis omitted) (citing *Sol v. AIG Hawaii Ins. Co.,* 76 Hawai'i 304, 307, 875 P.2d 921, 924, *reconsideration denied,* 76 Hawai'i 353, 877 P.2d 890 (1994)).

HRS § 291C–112 is a codification of Act 48, adopted by the 1972 legislature and entitled "A Bill for an Act Prohibiting the Use of Motor Vehicles as a Domicile or Residence." 1972 Haw.Sess.L.Act 48, at 231. The stated purpose of the Act was as follows:

> SECTION 1. **Purpose and findings.** The legislature finds that *the use of motor vehicles as a domicile or residence constitutes a hazard to the public health and welfare. The purpose of this act is to protect the public health and welfare* by prohibiting the use of any motor vehicle for purposes of human habitation unless authorized by law, applicable department rules and regulations, or under emergency conditions in the interest of vehicular safety.

*Id.* at § 1, at 231 (emphasis added).

The legislature indicated that the use of a motor vehicle parked on public property as a residence constituted a hazard to public health and welfare, but a review of the legislative reports reveals that the legislature was not otherwise specific about the particular evils it sought to prevent by enacting the statute. Nevertheless, in applying the rational basis test, our role is circumscribed. "Instead of engaging in a rigorous examina-

tion of the objectives behind the legislative enactment, the court will only seek to determine whether any reasonable set of facts can be conceived to uphold the challenged statute." *Daoang,* 63 Haw. at 505, 630 P.2d at 631.

■ HRS § 291C–112 does not absolutely prohibit the use of a vehicle located on public property for habitation purposes but allows such use in "parks, camps and other recreational areas in compliance with law and applicable rules and regulations,[9] or under emergency conditions in the interest of vehicular safety." HRS § 291C–112(c) (footnote added). The statute is therefore reasonably tailored to prevent the use of vehicles for habitation purposes in those instances where appropriate use has not been legislatively or administratively defined.

The evils the legislature sought to guard against are the "hazard[s] to the public health and welfare" engendered by using "motor vehicles as a domicile or residence." 1972 Haw.Sess.L.Act 48, § 1 at 231. A lack of appropriate sanitation facilities in vehicles used as dwellings is one obvious hazard to the public health. The State has a legitimate interest in protecting members of the general public who use the public property involved against the dangers caused by the lack of such facilities. Even where some vehicles may be "designed or equipped" for habitation, HRS § 291C–112(a), the State also has a legitimate interest in regulating the density of use of public property to maintain the nature and designated purpose of that property for the benefit of the public generally. *Cf. Village of Euclid, Ohio v. Ambler Realty Co.,* 272 U.S. 365, 373, 47 S.Ct. 114, 71 L.Ed. 303 (1926) (stating that it is well-established that "municipalities have power to regulate . . . areas of occupation, . . . and density of use [of land], in the interest of the public safety, health, morals, and welfare"); *accord Lum Yip Kee, Ltd. v. City & County of Honolulu,* 70 Haw. 179, 190, 767 P.2d 815, 822 (1989) (citing *Village of Euclid, supra* ); *Kauai County v. Pacific Standard Life Ins. Co.,* 65 Haw. 318, 338, 653 P.2d 766,

---

**9.** Title 13, Administrative Rules, Department of Land and Natural Resources, HRS Chapter 146 ("Hawaii State Park System") contains rules re-

garding camping and lodging permits for public parks.

779 (1982), *appeal dismissed*, 460 U.S. 1077, 103 S.Ct. 1762, 76 L.Ed.2d 338 (1983). Such matters are directly related to the State's legitimate interests in protecting the health and welfare of the public at large. We hold, then, that HRS § 291C–112 is directed at "legitimate state interest[s]." *Baehr*, 74 Haw. at 572, 852 P.2d at 74.

Our holding comports with decisions in other jurisdictions. Statutes prohibiting the use of a vehicle in a public place as a "dwelling place" or "living abode" have generally been upheld as a lawful exercise of the police power. *See Whiting*, 942 F.2d at 20 n. 1, 22 (upholding the constitutionality of a municipal ordinance making it unlawful for " 'any person to sleep in the nighttime in any motor vehicle' " where the stated purpose of the ordinance was "to protect public peace, health, and safety"); *Hershey*, 834 F.2d at 940 (upholding a city ordinance prohibiting lodging and sleeping in motor vehicles in public areas as consistent with "the government's interest in maintaining public areas in an attractive condition and in protecting the health, safety and welfare of the public" and not unconstitutionally overbroad or vague after striking portion of ordinance prohibiting sleeping); *Davenport*, 222 Cal. Rptr. at 737, 738 (upholding a city ordinance prohibiting sleeping in " '[a]ny public park during the period of time from 10:00 P.M. to 6:00 A.M.' " and stating that "government can constitutionally prohibit overnight sleeping in public areas as part of its broad police powers").

We next examine whether the statute "rationally furthers" legitimate state interests. *Baehr*, 74 Haw. at 572, 852 P.2d at 74.

**B.**

The legislature's purpose in adopting the "6:00 p.m. and 6:00 a.m." classification in HRS § 291C–112(a) is not evident from the face of the statute. 1972 Haw.Sess.L.Act 48, § 1 at 231. The legislative history also does not reveal the reason for the "6:00 p.m. and 6:00 a.m." classification. *See* Sen. Stand.Comm.Rep. No. 648, in 1972 Senate Journal, at 1025; Hse.Stand.Comm.Rep. No.

535, in 1972 House Journal, at 891. The history only reiterates that, "[T]his bill would restrict the use of any vehicle for purposes of human habitation while the vehicle is on public property between the hours of 6:00 p.m. and 6:00 a.m....." Hse.Stand.Comm.Rep. No. 535, in 1972 House Journal, at 891.

▇▇▇ Absent explicatory legislative history, we may consider how the legislature would have intended the legislation to be applied.

If, after consideration of text, context, and legislative history, the intent of the legislature remains unclear, then the court may resort to general maxims of statutory construction to aid in resolving the remaining uncertainty.... Those include, for example, the maxim that, where no legislative history exists, the court will attempt to determine how the legislature would have intended the statute to be applied had it considered the issue.

*PGE v. Bureau of Labor and Indus.*, 317 Or. 606, 859 P.2d 1143, 1146 (1993) (citations omitted). Applying the foregoing maxim, we conclude that the legislature's time-specific classification "rationally furthers" the interests we have discussed and does not offend the equal protection clause. *Baehr*, 74 Haw. at 572, 852 P.2d at 74.

In light of the objectives HRS § 291C–112 was intended to serve, the legislature could have logically prohibited the use of vehicles on public property as places of habitation at all times. However, the legislature could have reasonably assumed that more persons would use a vehicle as a place of habitation during the nighttime hours rather than during the daytime hours. Thus, we conclude that the legislature could rationally choose to prohibit habitation of vehicles from 6:00 p.m. to 6:00 a.m. on the belief that more people would be likely to use their vehicles for such prohibited purposes during that time as opposed to the period from 6:00 a.m. to 6:00 p.m. The legislature could also have pragmatically concluded that enforcement of the statute during this time period might be a more effective use of government resources.

We conclude that the legislature intended HRS § 291C–112 to be applied in this manner.

Defendant correctly asserts that the statute would not prohibit the use of vehicles parked on public property as dwellings outside the hours of 6:00 p.m. to 6:00 a.m. But whether the legislative approach under HRS § 291C–112 is the most even-handed or efficient manner of controlling habitation of public property is not the dispositive question. For "if the [statutory] classification has some 'reasonable basis,' it does not offend the Constitution['s] [equal protection clause] simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.'" *Nagle,* 63 Haw. at 396, 629 P.2d at 114 (quoting *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970)). A state "has much discretion in choosing the means to a legitimate state end or purpose...." *Nachtwey v. Doi,* 59 Haw. 430, 446, 583 P.2d 955, 965 (1978) (citations omitted). Thus, we hold that, generally, absent any overriding specific constitutional claim, the State may, under HRS § 291C–112, properly prohibit persons from using vehicles parked on public property as dwelling places during the hours of 6:00 p.m. to 6:00 a.m. Because HRS § 291C–112 "rationally furthers" legitimate state interests, it does not infringe on any claimed "right to work" or deny Defendant equal protection of the laws. *Baehr,* 74 Haw. at 572, 852 P.2d at 74.

## IV.

For the foregoing reasons, the judgment of December 21, 1992 is affirmed.

BURNS, Chief Judge, dissenting.

Based on my disagreement with the majority's definition of the words "use as a ... sleeping place[,]" in Hawai'i Revised Statutes (HRS) § 291C–112(b), I dissent.

HRS § 291C–112 states in relevant part that

(a) No person shall use any vehicle for purposes of human habitation, ..., while the vehicle is parked on any ... public property between the hours of 6:00 p.m. and 6:00 a.m. ...

(b) As used in this section "purposes of human habitation" includes use as a dwelling place, living abode, or sleeping place.

(c) This section does not apply to the parking of vehicles and their use for purposes of human habitation in parks, camps, and other recreational areas in compliance with law and applicable rules and regulations, or under emergency conditions in the interest of vehicular safety.

HRS § 291C–112(a) and (b) prohibit the use of a vehicle during the prohibited hours on a prohibited place as a:

1. dwelling place, or

2. living abode, or

3. sleeping place.

A "dwelling" is "a building or construction used for residence: abode, habitation." *Webster's Third New International Dictionary* 706 (1981). An "abode" is a "place where one abides or dwells: home." *Id.* at 4. Notwithstanding these dictionary definitions, the legislature expressly prohibited "use as a dwelling place, living abode, or sleeping place."

Under the plain language of subsections (a) and (b), sleeping in a vehicle during the prohibited hours on public property violates the statute without any evidence that the sleeping in the vehicle is related to dwelling place or living abode purposes.

Subsection (c) contains two express exceptions. The second express exception allows the use of parked vehicles for purposes of human habitation "under emergency conditions in the interest of vehicular safety." This exception applies more to sleeping than to dwelling.

Notwithstanding the plain language of the statute, the majority concludes that

[t]he terms "dwelling place" and "living abode" clearly denote habitation. The term "sleeping place," taken alone, may

arguably connote occupancy of a vehicle which might not amount to habitation. Read in the context of the statute, however, the phrase "sleeping place" is obviously modified by the preceding reference to "purposes of human habitation." Thus, "sleeping place" as used in the definition is a place inhabited for sleeping purposes. Accordingly, HRS § 291C–112 plainly targets only activities associated with habitation.

The dictionary definition of "habitation" includes "the act of inhabiting: state of inhabiting or dwelling or of being inhabited: ... dwelling place: house, home, residence." *Id.* at 1017. The only purpose for HRS § 291C–112(b) was to add "use as a ... sleeping place," to the dictionary definition of "purposes of human habitation." The majority interprets HRS § 291C–112(b) as if it does not contain the words "or sleeping place," and interprets HRS § 291C–112 as if it does not contain subsection (b).

In my view, the majority's definition violates the Hawaiʻi Supreme Court's often repeated instruction that

> [w]hen construing a statute, "our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from language contained in the statute itself." *State v. Wells,* 78 Hawaiʻi 373, 376, 894 P.2d 70, 73 (citation and internal quotation marks omitted), *reconsideration denied,* 78 Hawaiʻi 373, 894 P.2d 70 (1995).

*State v. Ganal,* 81 Hawaiʻi 358, 371, 917 P.2d 370, 383 (1996).

The majority's definition also violates the Hawaiʻi Supreme Court's rule of statutory construction that

> [t]his court presumes legislative enactments to be valid and, where possible, interprets every word, clause, and sentence of a statute to give them effect. *Richardson v. City and County of Honolulu,* 76 Hawaiʻi 46, 54, 868 P.2d 1193, 1201 (citation omitted), *reconsideration denied,* 76 Hawaiʻi 247, 871 P.2d 795 (1994). As a

general rule, unambiguous language will not be rejected if a construction can be found that will preserve and give force to all the words of a statute. *Id.* at 60, 868 P.2d at 1207[.]

*Shimabuku v. Montgomery Elevator Co.,* 79 Hawaiʻi 352, 357, 903 P.2d 48, 52 (1995).

The majority's definition also violates the maxim that "[w]here the language [of a statute] is plain and unambiguous, the court's sole duty is to give effect to its plain and obvious meaning." *State v. Aluli,* 78 Hawaiʻi 317, 320, 893 P.2d 168, 171 (1995).

The majority's definition also violates the maxim *noscitur a sociis.*

> The rule [*noscitur a sociis*] will not be applied where there is no ambiguity, or to thwart the legislative intent, or to make general words meaningless. The maxim is only an extrinsic aid and should only be used when the clear meaning of the words used in the statute is doubtful.

N. Singer, 2A *Sutherland Statutory Construction* § 47.16 (5th Ed.1992) (footnotes omitted).

The majority does not explain why it interprets HRS § 291C–112(b) as if it did not contain the words "or sleeping place." If their reason is the possibility that a literal interpretation would cause the statute to be unconstitutional, I question the validity of that reason. It appears probable that a literal interpretation would not cause the statute to be unconstitutional. Although not exactly on point, the following quote is relevant.

> Besides panhandling, the conduct most typically associated with the homeless is sleeping on the streets and on public property. It is not surprising, therefore, that municipalities concerned with the attendant problems of homelessness have enacted prohibitions aimed at eliminating this type of behavior. Courts have generally, though not universally, upheld the constitutionality of such ordinances.

Comment, *Compassion, Politics, and the Problems Lying on Our Sidewalks: a Legis-*

*lative Approach for Cities to Address Home-lessness,* 67 Temp.L.Rev. 1259, 1291 (1994) (footnote omitted.)